# McDOWELL v. UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
FOURTH CIRCUIT.

No. 552. Submitted October 15, 1895. — Decided November 18, 1895.

There being a vacancy in the office of District Judge for the District of South Carolina from January 1, 1894, to February 12, 1894, and the term of that court for the Western District being fixed by law for the fifth day of February, 1894, one of the Circuit Judges of the circuit designated and appointed a Judge of one of the District Courts in North Carolina, within the same circuit, to hold and preside over that term. Court was so held and adjourned from day to day. February 12 a commissioned Judge appeared. Plaintiff in error was tried upon an indictment returned against him, found guilty and sentenced. *Held*,

(1) That it is within the power of Congress to provide that one District Judge may temporarily discharge the duties of that office in another district;

(2) That whether existing statutes authorized the appointment of the North Carolina District Judge to act as District Judge in South Carolina is immaterial; as,

(3) He must be held to have been a judge *de facto*, if not *de jure*, and his actions, as such, so far as they affect third persons, are not open to question.

Where there is an office to be filled, and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer *de facto*, and are binding on the public.

THIS case comes to this court on questions certified by the Court of Appeals of the Fourth Circuit. The facts, as stated, are that a vacancy existed in the office of District Judge of the United States for the District of South Carolina, from January 1, 1894, to February 12, 1894. The regular terms of the District Court for the Western District were fixed by law to be held at Greenville on the first Mondays of February and August, act of April 26, 1890, c. 165, 26 Stat. 71, and the first Monday of February, 1894, fell on the fifth day of the month. On January 30, 1894, the following order, made by Hon. Charles H. Simonton, one of the Circuit Judges of the circuit, was duly filed in the clerk's office:

"It appearing to me by the certificate of the clerk, under the seal of the court, this day filed, that there is such an accumulation of business and urgency for the transaction thereof in the District Court for the Western District of this State, and that the public interests require the designation and appointment of a District Judge within this circuit to hold the regular term of this court beginning on the first Monday of February, 1894, at Greenville, South Carolina:

"Now, therefore, in consideration of the premises and on motion of the United States attorney, I do hereby designate and appoint the Honorable Augustus S. Seymour, judge of the District Court of the United States for the Eastern District of North Carolina, the same being in the fourth circuit, to hold and preside over the said term of court, and to have and to exercise within the Western District of South Carolina the same powers that are vested in the Judge of the said district."

In pursuance of this order, Judge Seymour held and presided over the regular term of the District Court for that district, from February 5 to February 12, on which day Hon. William H. Brawley, appointed and duly commissioned as District Judge, qualified and entered upon the discharge of his official duties, and held and presided at the term from that day until the conclusion of the proceedings in this case. On February 16 an indictment was returned into the court against A. F. McDowell, the plaintiff in error. Upon this indictment McDowell was tried February 21 and 22, and a verdict of guilty returned. A motion for a new trial was overruled February 23. Thereupon and before sentence, McDowell made a motion in arrest of judgment, on the ground that the indictment had been found, and the subsequent proceedings had thereon, at what was an unlawful term of court, and that such indictment and subsequent proceedings were consequently void. This motion was overruled and sentence pronounced upon the verdict. The making of the motion in arrest and its disposition appear in the record in a bill of exceptions, which refers to the indictment as found by "the grand jury empanelled at the special February term of said

court, at Greenville, at the district aforesaid," and the statement of the matter upon which the motion in arrest was founded commences: "At the opening of the special February term, 1894, of said court, that being the term at which said indictment was found," but the record nowhere discloses the calling of any special term as such. Upon these facts the Court of Appeals certified these questions:

"1. Whether plaintiff in error was indicted, convicted, and sentenced at a lawful term of the District Court for the District of South Carolina and the Western District thereof, sitting at Greenville, as set forth in this certificate?

"2. Whether the question as to the validity of the indictment and proceedings against plaintiff in error was open to consideration on the motion in arrest of judgment?"

*Mr. J. Altheus Johnson* for plaintiff in error.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The contentions of counsel for plaintiff in error are that the power of a Circuit Judge or Justice to call one District Judge from his own into another district does not extend to cases in which there is a vacancy in the office of judge of the latter district; that the order of the Circuit Judge designating and appointing Judge Seymour to hold the February term, was void; that the term lapsed; that no special term having been called, Judge Brawley was attempting to hold the District Court at a time unauthorized by law, and that, therefore, all proceedings before him were *coràm non judice* and void.

This obviously presents a mere matter of statutory construction, for the power of Congress to provide that one District Judge may temporarily discharge the duties of that office in another district cannot be doubted. It involves no trespass upon the executive power of appointment. There is no constitutional provision restricting the authority of a District Judge to any particular territorial limits. District Courts

are solely the creation of statute, and the place in which a judge thereof may exercise jurisdiction is subject absolutely to the control of Congress.

At first there was no authority for the temporary transfer of one judge to another district. The Judiciary Act of September 24, 1789, c. 20, § 6, 1 Stat. 73, 76, simply provided that a District Judge, if unable to attend at the day appointed for the holding of any term, might, by his written order, continue it to any designated time, and that in case of a vacancy all matters pending in the court should be continued as of course until the first regular term after the filling of the vacancy.

Since then there has been repeated legislation, each successive statute seemingly intended to make larger provision for the regular and continued transaction of the business of the District Court. Thus, in 1850, 9 Stat. 442, Rev. Stat. § 591, an act was passed providing that when any District Judge was prevented by any disability from holding any term, and that fact was made to appear by the certificate of the clerk under the seal of the court to the Circuit Judge, such judge might, if in his judgment the public interests so required, designate and appoint the judge of any other district in the circuit to hold such term and to discharge all the judicial duties of the judge so disabled during such disability. This, it will be noticed, applied only in case of disability on the part of the regular District Judge. Two years thereafter, in an act 10 Stat. 5, carried into the Revised Statutes as § 592, like authority was given to call in the judge of some other district when, as shown by the certificate of the clerk, from the accumulation or urgency of business in any District Court, the public interests so required. This statute contemplated the doubling of the judicial force, and authorized both judges, the regular and the appointed judge, to act separately in the discharge of all duties. Finally, in 1871, an act was passed, 16 Stat. 494; Rev. Stat. § 596, which reads as follows:

"It shall be the duty of every Circuit Judge, whenever in his judgment the public interest so requires, to designate and appoint, in the manner and with the powers provided in section 591, the District Judge of any judicial district within his circuit

to hold a District or Circuit Court in the place or in aid of any other District Judge within the same circuit; and it shall be the duty of the District Judge, so designated and appointed, to hold the District or Circuit [Court] as aforesaid, without any other compensation than his regular salary as established by law, except in the case provided in the next section."

This gives full power to the Circuit Judge to act without reference to any certificate from the clerk, whenever in his judgment the public interests require. It is contended that the words "in the place or in aid of" limit the power of designation and appointment to those cases in which there is an existing District Judge. This construction, it is claimed, finds support in section 602, Rev. Stat., which in substance reënacts the latter part of section 6 of the judiciary act of 1789, to the effect that in case of a vacancy in the office of District Judge all matters pending before the court shall be continued, of course, until the next stated term after the appointment and qualification of his successor. While "in aid of" naturally imply some existing judge to be aided, the words "in the place of" do not necessarily carry the same implication. *Commonwealth* v. *King*, 8 Gray, 501. They may, without doing violence to language, be construed to mean that the designated judge is to take temporarily the place which is or has been filled by a regular judge.

Section 602 throws little light on the question. It does not purport to abolish the term. The existence of a term does not depend on the fact that any business is transacted thereat, nor does any general order of continuance of itself close the term. A simple illustration will demonstrate this. Suppose at the commencement of any regular term of this court a general order should be entered continuing all matters to the succeeding term, no one would contend that such an order of itself adjourned the term, or prevented the court from adjourning from day to day until such time as it saw fit to order a final adjournment. The officers attending after the continuance of the cases and until the final order of adjournment would unquestionably receive their per diems for attendance upon a term of the court. The declaration that the process, etc.,

shall be " continued, of course," means simply continued with-
out any special order; and was obviously designed to prevent
that failure of right which in many cases might otherwise
result from the absence of a judge. It is familiar that process
is often made returnable at a term, and notices are given of
applications for orders at a term. In these and similar cases
rights are created which may depend for their continued exist-
ence upon some action of the court at the term. Clearly, the
statute does not destroy or even temporarily suspend the juris-
diction of the regular judge when appointed over matters
pending in his court.

But whatever doubts may exist whether the order of desig-
nation by the Circuit Judge was within his power, there is
another consideration which is decisive of this case. Judge
Seymour must be held to have been a judge *de facto*, if not a
judge *de jure*, and his actions as such, so far as they affect
third persons, are not open to question. *Ball* v. *United States*,
140 U. S. 118, 129; *Norton* v. *Shelby County*, 118 U. S. 425;
*Hunter's Adm'r* v. *Ferguson's Adm'r*, 13 Kansas, 462. The
time and place of a regular term of the District Court were
fixed by law at Greenville, on the first Monday of February.
Judge Seymour was a judge of the United States District
Court, having all the powers attached to such office. He
appeared at the time and place fixed by law for the regular
term, and actually held that term. The Circuit Judge had,
generally speaking, the power of designating the judge of
some other district to do the work of the District Judge in
this district. The order of designation was regular in form,
and there was nothing on its face to suggest that there was
any vacancy in the office of District Judge for the District of
South Carolina. Any defect in the order, if defect there was,
is shown only by matters *dehors* the record. While this may
not be conclusive, it strongly sustains the contention of the
government that Judge Seymour was, while holding that
term, at least a judge *de facto*. Whatever doubt there may be
as to the power of designation attaching in this particular
emergency, the fact is that Judge Seymour was acting by vir-
tue of an appointment, regular on its face, and the rule is

well settled that where there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer *de facto* and binding upon the public. Of course, if he was judge *de facto* his orders for the continuance of the term from day to day until February 12, when the regular judge took his place upon the bench, were orders which cannot be questioned, and the term was kept alive by such orders until Judge Brawley arrived. The record shows that the indictment was not found until after the latter was on the bench. Whether the grand jury was in fact empanelled or not before Judge Brawley took his seat, does not appear from the record. While Rev. Stat., § 817, provides that ordinarily jurors shall for this district be drawn at a preceding term, yet such provision does not conflict with the power granted in section 810 to all Circuit and District Courts, as follows : " And either of the said courts may in term order a grand jury to be summoned at such time, and to serve such time as it may direct, whenever, in its judgment, it may be proper to do so." Under this provision the judge may at any term, regular or special, and at any time in the term, summon a grand jury.

Indeed, we may assume that all the proceedings in respect to this case were held before the regular judge of that court, and that the only orders which Judge Seymour made bearing upon this case were the daily orders of continuance of the court and the keeping alive of the term from February 5 to February 12, and these were orders made by a *de facto* judge of that court, and are, as we have stated, not open to challenge. The fact that in the recital of the proceedings the term is spoken of as a special term is immaterial in the face of the statement that the regular term was opened on February 5 and continued from day to day, until after the proceedings complained of had taken place. It follows from these considerations that the first question certified to this court must be answered in the affirmative. In view of this answer it is unnecessary to consider the second question.

*The case will, therefore, be sent back to the Court of Appeals with an answer to the first question in the affirmative.*