## Ex Parte Dones.

### Application for the Writ of Habeas Corpus.

No. 2.—Decided February 14, 1906.

District Courts—Powers of the Legislature of Porto Rico with Respect Thereto.—Section 33 of the Organic Law of Porto Rico empowers the Legislature to change the organization, jurisdiction, number of judges, and the procedure of the district courts created by the military government and continued in existence by the said Organic Law until modified by subsequent legislation; and this provision must be understood to refer to acts of the Legislature of Porto Rico and not to acts of the Congress of the United States.

CONSTRUCTION OF STATUTES.—Courts must interpret statutes so as to give effect to every part thereof.

DISTRICT COURTS—ACT TO REORGANIZE JUDICIARY—FORCE AND VALIDITY THEREOF. —The act reorganizing the judiciary, approved March 10, 1904, is valid and effective, since it contains no provision incompatible with the Organic Law, and the district courts created by the said act are legally constituted.

DISTRICT JUDGES—QUALIFICATION FOR THE DISCHARGE OF DUTIES THEREOF.— Where a person has been appointed to the office of district judge, without having been admitted to practise law before the Supreme Court, the defect may be remedied by securing his admission to practise before said court; and if his capacity to act as a judge should be attacked in any case or proceeding, it would be necessary to decide whether at the date on which he acted in such case or proceeding he was or was not qualified to discharge the duties of that office, without regard to whether he was qualified or not upon the date of his appointment.

ID.—PUBLIC OFFICIALS—LEGALITY OF APPOINTMENT OR ELECTION.—Where the lack of capacity of a person appointed or elected to a public office is of such a nature that it may be remedied or removed before taking charge of such office, such person must be deemed to have been duly appointed or elected, and he may assume the duties of his office upon the removal of the incapacity.

ID.—HABEAS CORPUS—JUDGE DE FACTO—VALIDITY OF HIS ACTS.—Even where a judge is not duly and legally qualified to act as such, and even where his lack of capacity is incapable of being remedied and he cannot for that reason be considered as a judge *de jure,* he will be deemed to be a judge *de facto* and, as such, a judgment rendered by him cannot be assailed in *habeas corpus* proceedings.

ID.—QUO WARRANTO.—The capacity of a judge to act as such and to render a judgment of conviction against a defendant in a criminal cause will be considered only in a *quo warranto* and not in a *habeas corpus* proceeding.

ID.—A defendant who has been found guilty by a jury and sentenced by a judge *de facto,* acting under color of authority although not a judge *de jure,* and which defendant was imprisoned by virtue of such judgment, will not be discharged on *habeas corpus* proceedings.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for petitioner.

*Mr. Feuille, Attorney General, and Rossy, fiscal,* for The People.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is an application for the writ of *habeas corpus* made by Francisco Dones, a prisoner in the penitentiary of this Island, who is under sentence of death, having been convicted of murder in the first degree. The date of his execution was fixed for to-day, and last night he presented his application for the writ of *habeas corpus* to the Chief Justice of this

court, who issued the writ, returnable before the court in banc, at 9 o'clock this morning.

His petition is based upon two grounds: First. Because the District Court of Humacao, which tried the case and pronounced sentence of death against the petitioner, is not properly constituted, consisting as it does of a single judge, and being authorized by the Judiciary Act passed by the Legislature of Porto Rico on the 10th of March, 1904, the same being contrary to the provisions of the Organic Law, and especially to section 33 thereof; alleging that under the Organic Act, which continued in force the military orders made in this Island during the term of the military government here, the said courts consisted of three judges and under the Judiciary Act hereinbefore referred to the number was reduced to one. This point is based upon a construction given by the petitioner to section 33 of the Organic Act, which reads as follows:

"That the judicial power shall be vested in the courts and tribunals of Porto Rico as already established and now in operation, including municipal courts, under and by virtue of General Orders, No. 118, as promulgated by Brigadier-General Davis, United States Volunteers, August 16, 1899, and including also the police courts established by General Orders, No. 195, promulgated November 29, 1899, by Brigadier-General Davis, United States Volunteers, and the laws and ordinances of Porto Rico and the municipalities thereof in force, so far as the same are not in conflict herewith all which courts and tribunals are hereby continued. The jurisdiction of said courts and the form of procedure in them, and the various officials and attachés thereof, respectively, shall be the same as defined and prescribed in and by said laws and ordinances, and said general orders numbered 118 and 195, until otherwise provided by law: *Provided, however,* That the Chief Justice and Associate Justices of the Supreme Court and the marshal thereof shall be appointed by the President, by and with the advice and consent of the Senate, and the judges of the district courts shall be appointed by the Governor, by and with the advice and consent of the Executive Council, and all other officials and attachés of all the other courts shall be chosen as may be directed by the Legislative Assembly, which shall have authority to legislate from time to time as it may see fit with respect to said

courts, and any others they may deem it advisable to establish, their organization, the number of judges and officials and attachés for each, their jurisdiction, their procedure, and all other matters affecting them."

It will be seen that this section may readily be construed to authorize the Legislative Assembly of Porto Rico to change the constitution of the district courts, and the number of judges therein, and to mean that the former constitution of the courts was only continued in force until changed by subsequent law. It is contended that this means properly a law of Congress, but we do not think this construction can be properly given to the act, because if it meant a law of Congress, the words would have been entirely unnecessary since Congress, of course, had the right to change the law passed to establish a Government in Porto Rico at any time without reserving that power in the act itself. It seems to us clear that a proper construction of this act leaves it to the Legislature of Porto Rico to make such changes in the constitution, jurisdiction, number of judges, and practice in the district courts of this Island, as may from time to time appear to such body to be necessary. But let us turn the question over and look at it on all sides and by further discussion elucidate if possible the intention of the Congress on this subject.

This question can be reduced to a small compass in the following proposition: Does the language used by Congress in section 33 of the Foraker Act refer to the district courts of Porto Rico, which were and are the trial courts having general jurisdiction of criminal matters in this Island, or does it refer only to such courts as might be established by authority of the Insular Legislature?

In the former part of the section above referred to it is said the "jurisdiction of said courts and the form of procedure in them, and the various officials and attachés thereof respectively, shall be the same as defined and prescribed in

and by said laws, ordinances, and said General Orders num-
bered 118 and 195 until otherwise provided by law." What
authority is to provide such a law? Is it the Legislative
Assembly of Porto Rico, or is it the Congress of the United
States?

It has been repeatedly held by this court that this ex-
pression quoted from the Organic Act refers to the laws
passed by the Legislative Assembly of Porto Rico, and that
said assembly was duly authorized by the Organic Act itself
to legislate from time to time as it might see fit, with respect
to the said courts. The expression "said courts" is twice
used in section 33 of the Organic Act, and as we believe, ac-
cording to all fair construction to be put upon the words of
the statute, they refer as well to the district courts of the
Island as to the other inferior courts.

According to all rules of construction, courts are required
so to interpret statutes as to give effect to every part thereof.
If this statute should be otherwise interpreted, the words
"until otherwise provided by law," as we have heretofore
shown, would be without any meaning whatever, and must
have been used by Congress in vain and without any legis-
lative effect. The Organic Act of Porto Rico was not in-
tended to be a permanent law, but only to provide a tempo-
rary government for Porto Rico, and since it was impossible
for the Legislature to assemble for several months after the
act establishing civil Government went into effect on the 1st
of May, 1900, it was necessary in the meantime to continue the
courts as they then existed in operation, and for this reason
section 33 of the act was drawn in the language used.

A further matter to be taken into consideration, in con-
nection with the Judiciary Act of 10th March, 1904, is that it
was passed nearly two years ago, and has been in active
operation in this Island for about twenty months, and that
the Congress of the United States, during all these months,
has had the power, as it has in all laws passed by the Insular
Legislature, to revoke and annul this statute, yet this has

never been done; and thus, by the nonaction of Congress in the premises, the act has the tacit approval of the same legislative body which enacted the Organic Law.

If the construction relied upon by the petitioner's counsel were adopted by this court and carried into effect, it would destroy and annul every judgment which has been rendered by a district court in civil or criminal matters since the Judiciary Act was passed and went into effect on the 1st of July, 1904. The jails and the penitentiary would be emptied into the streets and a state of confusion would exist in civil rights which it would be almost impossible to remedy. But even at such a price, if the construction contended for is correct, it should be approved.

A reference also made to section 8 of the Organic Act itself will show that the laws heretofore in force in Porto Rico were only continued in force by the Organic Act until they might be changed by the Insular Legislature, and that full power was granted to make such changes as in its wisdom might appear to be fit, necessary or proper. Besides section 15 of the Organic Act reads as follows:

"That the legislative authority hereinafter provided shall have power by due enactment to amend, alter modify, or repeal any law or ordinance, civil or criminal, continued in force by this act, as it may from time to time see fit."

From this section of the law it is clearly seen that the Insular Legislature had full power and authority to amend, alter, modify or repeal all the ancient laws of this Island which were continued in force temporarily by the other sections of the same act. This could be done from time to time as the said Legislature might see fit. Then we feel constrained to hold that the Judiciary Act of the 10th of March, 1904, is not in contravention of the Organic Act, passed by the Congress of the United States on the 12th of April, 1900, establishing Civil Government in this Island, and that the district courts in this Island as now established, under the

Judiciary Act heretofore mentioned, are legally and properly the courts having jurisdiction of all criminal offenses of the grade of felony, and that the District Court of Humacao had jurisdiction of the case which was prosecuted against the petitioner, and that he was, as far as this objection goes, properly tried and sentenced therein.

The second point relied on for the granting of this writ is that Hon. James A. Erwin, the district judge who tried the case of *The People of Porto Rico* v. *Francisco Dones,* in the District Court of Humacao, and who sentenced him to the death penalty, was not legally and properly appointed, and had no authority to act as such district judge, because he was not, at the date of his appointment by the Governor, and confirmation by the Executive Council of Porto Rico, a lawyer authorized to practise in the Supreme Court of this Island. He had been a district judge for several years previous, but the law passed on the 10th of March, 1904, and taking effect on 1st July, following, commonly known as the Judiciary Act, prescribes in section 2 that:

"Each district judge shall have the following qualifications: He shall be over twenty-five years of age, shall be a lawyer of good standing, admitted to the bar of the Supreme Court of Porto Rico, and must be able to conduct the business of his court in the Spanish language, including the ability to instruct the jury, either verbally or in writing, in the said language," (See Laws of 1904, reg. ses., p. 104.)

The evidence adduced on the trial showed that James A. Erwin, Esq., was appointed judge of the Humacao district under the Judiciary Act heretofore quoted on the 18th of June, 1904, his commission to date from the 1st of July, 1904, and was confirmed by the Executive Council on the 24th day of June, and that previous to that time he had not been admitted as a lawyer to practise before the Supreme Court of Porto Rico, but that his admission to the bar of Porto Rico did not take place until the 19th of July, nineteen days after the date at which his term was to begin. It does not appear

from the record on what date he qualified under this commission by taking the oath of office. However, it appears from the record in this case, that the murder of which Francisco Dones was convicted occurred on the 25th of February, 1905, the victim dying on the 1st of March, following. The accused was arraigned on the 23d of the same month, and his trial took place on the 17th and 18th of April in the same year. He was sentenced to the death penalty on the 24th of April, 1905. He took an appeal to this court, and the transcript was filed herein on the 14th of July, 1905, and the sentence was in all things affirmed on the 5th of December last. These dates may be considered important, because they show that all the transactions connected with the trial and conviction and sentence of this petitioner occurred after Judge Erwin had been appointed and confirmed, and after he had been admitted as a member of the bar of the Supreme Court of Porto Rico. Even if he were not duly qualified at the time that he was appointed and confirmed as judge of the District Court of Humacao, for lack of a license to practice law in Porto Rico, the defect in his qualifications was one which could be subsequently cured by his admission to the bar, and it was cured long before the proceedings taken in the case of Francisco Dones, resulting in his conviction, transpired. That statute says that: "Each district judge shall have the following qualifications." It does not say he shall have them when appointed, and it is presumed to be sufficient if he has them when he is exercising the duties of his office. At the date of the trial and conviction of this petitioner, and of his sentence to death by Judge Erwin, in the District Court of Humacao, the judge trying the case and sentencing the prisoner had all the qualifications prescribed by law, and the question of his qualifications would have reference to those dates, rather than to the date of his appointment. Supposing he had been under twenty-five years of age at the date of his appointment and confirmation, and afterwards reached the age of twenty-five, before he began to exercise the duties of his office, certainly

he would have then been qualified to hold the office, and no objection could have been brought against him. It is held by the authorities that if the ineligibility of a person to an office is such that it will or may be removed in time for him to qualify, he must be held to have been duly elected or appointed; and he can qualify on the removal of the disability. Certainly Judge Erwin could have qualified between the 19th and last day of July, 1904. Cases similar to this have been decided in the various courts of the several States, among which may be cited the following: *State ex rel. Perine* v. *Van Beek,* 19 L. R. A., 625; *State ex rel. Childs* v. *Sutton,* 30 L. R. A., 633; *State* v. *Murray,* 9 Am. Rep., 490.

Since some confusion seems to prevail in the mind of counsel as to what person may be properly deemed an officer *de facto,* we will invoke the highest legal lexicographical authority in the matter, and we find that

"An officer *de facto* is one who has the reputation of being the officer he assumes to be and yet is not a good officer in point of law." (2 Bouvier's Dict., 544.)

And under all the authorities, without a break in the current, we find that even though Judge Erwin were not legally and properly qualified to act as a judge, and even if his disqualification were not remediable, and the defect in his appointment still continued up to the present time, he was at least, if not a judge *de jure,* a judge *de facto;* and being such the judgment rendered by him in this case cannot be called in question on *habeas corpus.* We have decided this in the case of *The People of Porto Rico* v. *Hobart S. Bird,* decided in this court on the 15th of June, 1903, and also in the case of *The People of Porto Rico* v. *Antonio Rivera et al.,* which was decided by this court on the 21st of November, 1905, and reference therein made to the case of Bird above mentioned. In both of these cases reference is made to the case of *The State* v. *Carroll,* 38 Conn., 449, which is a leading case on this subject, and amply sustains the doctrine here set forth. Besides,

it has been repeatedly quoted and approved by the supreme Court of the United States, and is very direct and explicit on this point, clearly showing that a judge acting in a case like the present is a judge *de facto,* and that his judgments cannot be collaterally attacked. The Supreme Court of the United States has repeatedly decided that an "act of a *de facto* officer is binding on the public. A judge *de facto* is a judge *de jure* as to all parties except the Commonwealth." *McDowell* v. *United States,* 159 U. S., 601; *Nofire* v. *United States,* 164 U. S., 661; *Ball* v. *United States,* 140 U. S., 118-129; *Norton* v. *Shelby County,* 118 U. S., 425; *Walcott* v. *Wells,* 9 L. R. A., 59; *Coyle* v. *Com.,* 104 Penn., 130.)

The qualifications of the trial judge who pronounces the judgment of conviction against a prisoner can only be called in question by a writ of *quo warranto.* The writ of *habeas corpus* cannot be used as a substitute for any other writ. A prisoner who has been convicted by a jury and sentenced by a judge *de facto* acting under color of office, though he may not be a judge *de jure,* and who is detained in custody by virtue of such a sentence cannot properly be discharged on *habeas corpus.* In this proceeding no inquiry can be made into the validity of the appointment of such a judge, before whom the prisoner has been convicted of a crime. This is well established by a long line of decisions which may be found under the proper title in the American and English Encyclopedia of Law. See page 237 of the first edition.

Reference may also be had, to sustain this well established principle, among others, to the following cases: *Norton* v. *Shelby County,* 118 U. S., 445; *In re Manning,* 139 U. S., 504; *Ball* v. *United States,* 140 U. S., 128; *McDowell* v. *United States,* 159 U. S., 601; *North Carolina* v. *Lewis,* 11 L. R. A., 105; *In re Boyle,* 9 Wis., 264; *Dean* v. *Gleason,* 16 Wis., 1; *In re Drake,* 76 Wis., 757; *Ex parte Call, Jr.,* 2 Tex. App., 497; *Ex parte Strol,* 16 Iowa, 369; *State* v. *Bloom,* 17 Wis., 521; *In re Walker,* 3 Barber N. Y., 162; *In re Bryan,* 1 Barber N. Y., 340; *Com.* v. *Lecky,* 26 Am. Dec., 48; *Shehan* v.

*Henderson,* 28 La. Annual, 82; *People* v. *Stevens,* 5 Hull N. Y., 630; *People* v. *Wood,* 24 New York, 520; *Coyle* v. *Com.,* 104 Penn., 130; *Railway Company* v. *Langdale County,* 56 Wis., 614; *Yearty* v. *Payne,* 62 Wis., 154.

The doctrine which sustains the acts of a judge *de facto* is thus commented on by the Supreme Court of the United States in an opinion rendered by Mr. Justice Field. He says:

"The doctrine which gives validity to acts of officers *de facto,* whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interest may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question." (*Norton* v. *Shelby,* 118 U. S. Rep., pp. 441 and 442.)

This point has been so well established in so many cases decided by the highest courts, and the most eminent judges, that it is unnecessary to pursue the matter further; and we feel bound to hold that, whether or not Judge Erwin of the District Court of Humacao, was a judge *de jure,* he was at least a judge *de facto,* when he tried and determined the case of this petitioner in the District Court of Humacao, and that his authority, or the jurisdiction of his court, on account of his qualifications, cannot be called in question in this collateral proceeding.

Under this view of the case, in accordance with the authorities herein quoted, the application of the petition for enlargement on *habeas corpus* should be denied.

*Denied.*

Chief Justice Quiñones, and Justices Hernández, Figueras, and Wolf concurred.