Collins, Judge,
delivered the opinion of the court:
Plaintiffs were, prior to their removal in December 1953,. members of the War Claims Commission. In this action, each plaintiff seeks to recover the salary of a War Claims-. Commissioner for the period July 1, 1954, to March 31, 1955. Defendant has moved for summary judgment, and plaintiffs-have filed a cross-motion for summary judgment.
The pertinent facts, which have been stipulated by the-parties, can be summarized as follows: Effective as of December 11, 1953, President Dwight D. Eisenhower terminated, each plaintiff’s membership on the War Claims Commission.. The underlying reason for the action of President Eisenhower was his determination that the Commission should be composed of “personnel of my own selection.” On December 18, 1953, plaintiffs wrote the Attorney General and requested the institution of a suit on behalf of the United States (ex rel. Myron Wiener and Georgia L. Lusk) against the persons who had succeeded them as members of the War Claims Commission. The Attorney General refused this; request.
*294 On February 3, 1954, plaintiff Wiener commenced, in tlie United States District Court for the District of Columbia, a quo warranto proceeding against the successor War Claims Commissioners. Holding that the removal of Wiener had been proper, the district court dismissed his action. On March 31,1954, Wiener took an appeal to the United States Court of Appeals for the District of Columbia Circuit.
Thereafter, on April 29, 1964, acting pursuant to the Reorganization Act of 1949,[1] President Eisenhower transmitted to the Congress Reorganization Plan No. 1 of 1954. This plan proposed, inter alia, the abolition of the War Claims Commission and the transfer of its functions and those of the International Claims Commission to a new agency to be known as the Foreign Claims Settlement Commission. Neither House of Congress passed a resolution expressing disapproval of the reorganization plan. Accordingly, on July 1, 1954, the President abolished the War Claims Commission and put into effect the other provisions of the reorganization plan.[2] As a consequence of the abolishment of the War Claims Commission, the parties to the quo warranto suit stipulated that the action had “become moot.” Thus, Wiener’s appeal was dismissed.
On August 20, 1954, plaintiff Wiener filed an action in the Court of Claims. He asserted that his removal had been unlawful, and he sought to recover back pay for the period from December 10, 1953, through June 30,1954. This court determined that the removal of Wiener had been valid and, therefore, his petition was dismissed. Wiener v. United States, 135 Ct. Cl. 827, 142 F. Supp. 910 (1956). Subsequently, this decision was reversed by the Supreme Court. 357 U.S. 349 (1958). On September 5, 1958, the Court of Claims entered a judgment in favor of plaintiff Wiener in the net amount of $7,220.66. 143 Ct. Cl. 956 (1958).
Shortly after final disposition of Wiener’s action in this court, plaintiff Lusk submitted to the General Accounting Office a claim for the pay which she had lost as a result of her removal from the War Claims Commission, i.e., her *295 salary from December 11, 1953, to June 30, 1954. On December 16, 1958, the Comptroller General certified that the claim of plaintiff Lusk was a valid one; shortly thereafter, she was paid the appropriate amount.
By a joint petition filed on December 2, 1959, plaintiffs instituted the present suit. The basis for this action is plaintiffs’ contention that the abolishment of the War Claims Commission was unlawful. The period for which recovery is sought commences with July 1, 1954, the date the reorganisation became effective, and ends on March 31, 1955, the date when plaintiffs’ statutory terms of office were to expire.[3]
The argument of plaintiffs is twofold. First, they contend that the reorganization plan in question went beyond the scope of the Reorganization Act of 1949, 63 Stat. 203, as amended, 5 U.S.C. §§ 133z to z-15 (1964). Alternatively, plaintiffs assert that the reorganization of the War Claims Commission was in violation of the Constitution.
With respect to the initial argument of plaintiffs, a basic element is the fact, pointed out by the Supreme Court in Wiener v. United States, supra, that the task of the War Claims Commission was “intrinsie[ally] judicial” in character. The Court stated, 357 U.S. 349, 355, the following:
* * * The claims [considered by the War Claims Commission] were to be “adjudicated according to law,” that is, on the merits of each claim, supported by evidence and governing legal considerations, by a body that was “entirely free from the control or coercive influence, direct or indirect,” Humphrey's Executor v. United States, * * * [295 U.S. 602, 629 (1935)], of either the Executive or the Congress. * * *
In the instant case, plaintiffs stress the distinction between (1) the adjudicatory functions of the War Claims Commission and (2) its executive and administrative functions. According to plaintiffs, only the latter type of activities could properly be affected by a reorganization plan. Thus, plaintiffs assert that, in abolishing the War Claims Commis *296 sion and in transferring all of its functions to a new agency,[4] tbe President exceeded his statutory authority.
In order to resolve this matter of interpretation of the Reorganization Act of 1949, we must look first to the statute itself. The fundamental characteristic of the Reorganization Act of 1949 and of prior similar acts was the use of cooperation between the executive and legislative branches in order to achieve executive reorganization. See H.R. Rep. No. 23, 81st Cong., 1st Sess. 6 (1949). The 1949 act set forth a procedure whereby the President would submit reorganization plans to the Congress and such plans would take effect after 60 days (of continuous session of Congress) unless either House passed a resolution of disapproval. 63 Stat. 205, as amended, 5 U.S.C. § 133z-4 (1964).
Unlike its predecessor (the Reorganization Act of 1945), the 1949 act contained no express limitation with regard to the effects which a reorganization plan might have upon “quasi-judicial or quasi-legislative” functions.[5] Plaintiffs assert that such a restriction should be read into the 1949 act, but we do not agree.
We find, contrary to plaintiffs’ contentions, that Congress did not wish the Reorganization Act of 1949 to impose any general limitation upon the reorganization of quasi-judicial and quasi-legislative functions. Each House of Congress accepted the recommendation of the Hoover Commission that no such limitation should be adopted. See S. Rep. No. *297 232, 81st Cong., 1st Sess. 8 (1949), and H.R. Rep. No. 23, 81st Cong., 1st Sess. 7 (1949).
In explaining its general opposition to exemptions and to limitations on the power of the President to prepare reorganization plans, the Hoover Commission expressed the belief that “the safeguard against unwise reorganization plans lies both in a sound exercise of the President’s discretion and in the reserve power in the Congress * * * to disapprove any proposed plan.” [6] A similar view was stated by President Truman in his January 17, 1949, message to the Congress. See S. Rep. No. 232, 81st Cong., 1st Sess. 5 (1949). With respect to the present litigation, the following statements of the Hoover Commission[7] are especially relevant:
* * * the inclusion of general language, like that contained in section 5(a) (6) of the Reorganization Act of 1945 * * * [see footnote 5, supra], intended to prevent the submission of any plan which imposes limitations upon the independent exercise of “quasi legislative” or “quasi judicial” functions, would, in the Commission’s judgment, be unwise. The phrases are extremely vague and of uncertain meaning. Ingenious and plausible arguments can be made to apply them to a wide range of functions which should clearly be subject to reorganization procedure. Such arguments would not be matters of purely theoretical concern or legislative debates, for the validity of reorganization could be made the subject of protracted litigation by private interests resisting the acts of a reorganized agency on the ground that it was illegally constituted. It might take several years of litigation to lay down interpretations of these general phrases and even then, uncertainty would remain. (Emphasis supplied.)
As indicated above, this recommendation of the Hoover Commission and the similar one of President Truman were accepted by the Congress. Plaintiffs’ construction of the 1949 *298 act attributes , to Congress a purpose which each House expressly disavowed. For this reason, we reject the assertion of plaintiffs that the reorganization of the War Claims Commission fell outside the limits of the act.[8]
After receiving from President Eisenhower the reorganization plan in question, neither House of Congress passed a resolution disapproving it. In view of the terms of the Reorganization Act of 1949, it is clear that, by not exercising its power of disapproval, the Congress indicated its full acceptance of the plan.[9] Although plaintiffs dispute this view (on the ground that the plan was not within the ambit of the 1949 act), they furnish no specific evidence in support of their position. That is, there is no indication whatsoever that the Congress considered the reorganization of the War Claims Commission to be “unlawful.” We hold, therefore, that the Congress did intend Reorganization Plan No. 1 of 1964 to become effective.
Furthermore, there exists an additional reason why plaintiffs cannot succeed with their assertion that the reorganization plan exceeded the limits of the Reorganization Act of 1949. One of the affirmative defenses put forth by defendant is that of laches, and we agree with defendant that plaintiffs’ action is barred by laches.
Although pertinent to plaintiffs’ initial argument, the defense of laches applies with special force to their second argument, i.e., their effort to challenge the constitutionality of the Reorganization Act of 1949. Basically, the second argument of plaintiffs is that, if Congress did intend to grant to the President the powers exercised in reorganizing the War Claims Commission, such a delegation contravenes the *299 Constitution.[10] Plaintiffs declare that abolition of the Commission amounted to repeal by the President of the War Claims Act of 1948, ch. 826, § 2, 62 Stat. 1240, as amended,, ch. 27, 65 Stat. 28 (1951). Further, according to plaintiffs,, the Reorganization Act of 1949 embodied such a broad delegation of legislative power that the act cannot be allowed to stand.
Since we hold that plaintiffs are precluded, on the ground of laches, from attacking the constitutionality of the Reorganization Act, we decline to discuss the merits of their argument.[11] It is sufficient to point out our reasons for applying the doctrine of laches.
The first element of laches is unreasonable delay, and plaintiffs are guilty of such delay. The matter complained of, abolition of the War Claims Commission, occurred on July 1, 1954. The present suit was not filed until December 2, 1959, 5 years and 5 months later. In other cases which involved periods of much shorter duration, this court has raised the bar of laches. See Alpert v. United States, 161 Ct. Cl. 810, 820 (1963), and cases cited there.
As indicated in Alpert v. United States, supra, at 821, laches is an “equitable doctrine,” and it will not be applied when the plaintiff provides a satisfactory explanation for the delay or when the defendant fails to show resulting prejudice. The explanation offered by the present plaintiffs is not a sufficient one. Plaintiffs state that they have been diligent in seeking relief, since it was not until June 30,1958 (the date the Supreme Court ruled that the removal of Wiener had been unlawful), that their right to bring the present suit “matured.”
Aside from the fact that 17 months elapsed between the decision of the Supreme Court and the commencement of this action, there is a basic fallacy in plaintiffs’ view. It is *300 true that plaintiffs would not have been able to recover on the basis of their present theory until it was determined that their removal was wrongful. However, the accrual of plaintiffs’ action was not dependent upon such a determination, but in fact occurred prior thereto. For instance, Wiener could have amended the petition in his prior action in this court so as to include the claim now being asserted. Similarly, plaintiff Lusk could have commenced a suit immediately after the abolition of the War Claims Commission. Yet, until the bringing of the instant suit, there was no manifestation by either plaintiff of intent to attack the validity of the reorganization. Plaintiffs have not been diligent- in pressing this claim.
With regard to the matter of detriment to the Government, the present case differs from the typical employee-removal suit. Often, laches is applied to prevent a dilatory plaintiff from recovering back salary for a lengthy period during which he rendered no service to the Government. E.g., Alpert v. United States, supra, at 821. See United States ex rel. Arant v. Lane, 249 U.S. 367, 372 (1919).
In the instant case, much more is at stake. Acceptance of plaintiffs’ argument regarding the unconstitutionality of the 1949 act would mean, at the very least, that Reorganization Plan No. 1 of 1954 was invalid. If we were to make such a holding, this would strike down not only the abolition of the War Claims Commission, but also the establishment of the Foreign Claims Settlement Commission. The latter body is still in existence and it has been functioning throughout the period of plaintiffs’ delay. To hold invalid or unconstitutional the plan which created the Foreign Claims Settlement Commission would amount to an invitation to suits on the part of disappointed claimants.[12] In fact, this possibility of “litigation by private interests resisting the acts of a reorganized agency on the ground that it was illegally constituted” is the precise danger which the Hoover *301 Commission warned against in its above-mentioned letters to the Congress. Plaintiffs, by neglecting to bring the present action until December 1959, permitted an increase in the possible amount of such litigation. This in itself constitutes sufficient prejudice to the Government.
Plaintiffs’ efforts to minimize the consequences of their delay are not persuasive. They say that any possible claims would be barred by the 6-year statute of limitations; since the “War Claims Act jurisdiction” of the Foreign Claims Settlement Commission expired on March 31, 1955. Plaintiffs’ error is their assumption that only decisions under the “War Claims Act jurisdiction” would be “cast into doubt.” As we have indicated, if the plan which created the Foreign Claims Settlement Commission were invalid, then virtually all decisions of that body would be vulnerable. Abolition of the War Claims Commission and establishment of the Foreign Claims Settlement Commission were integral parts of the reorganization plan. It would be incongruous to say that (.1) the abolition was not lawful, but (2) creation of the successor body was effective. Cf. Fowler v. Gage, 301 F. 2d 775, 778 (10th Cir. 1962). Thus, we reject plaintiffs’ contention.
Next, plaintiffs assert that the doctrine of "de facto officers” would prevent the reopening of the determinations of the Foreign Claims Settlement Commission. To illustrate this doctrine, plaintiffs cite McDowell v. United States, 159 U.S. 596 (1895) and Ex parte Ward, 173 U.S. 452 (1899). This argument of plaintiffs overlooks an important distinction. If the reorganization plan were invalid, the result would be not de fapto officers, but de facto offices. Eegarding the latter, a pertinent decision is Norton v. Shelby County, 118 U.S. 425, 441 (1886), where the Court stated:
* * * it is contended that if the act creating the board was void, and the commissioners were not officers de jure, they were nevertheless officers de facto, and that the acts of the board as a de facto court are binding upon the county. Tin's contention is met by the fact that there can be no officer, either de jure or de facto, if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. * * *
*302 See also United States v. Royer, 268 U.S. 394, 397 (1925). Since the above reasoning would appear to be applicable here, plaintiffs’ suggestion as to the de facto officer doctrine is not sound.
In conclusion, we hold that the defense of laches bars plaintiffs’ attack on the constitutionality of the Reorganization Act of 1949. This defense applies as well to plaintiffs’ contention regarding interpretation of the 1949 act. Moreover, we have found that there is no merit in the statutory interpretation put forth by plaintiffs. In view of these determinations, we need not consider the other defenses which defendant has asserted.
It follows, therefore, that plaintiffs are not entitled to recover. Their motion for summary judgment is denied. Defendant’s motion for summary judgment is granted, and the petition is dismissed.

 The Reorganization Act of 1949, 63 Stat. 203, as amended, 5 U.S.C. §§ 133z to z-15 (1964), is discussed infra.

 Reorganization Plan No. 1 of 1954 is set forth in the following: 19 Fed. Reg. 3985, 68 Stat. 1279, 5 U.S.C. § 133z-15 (1964).

 The date for the expiration of the terms of the War Claims Commissioners (March 31, 1955) was established by § 2 of the War Claims Act of 1948, ch. 826, § 2, 62 Stat. 1240, as amended, ch. 27, 65 Stat. 28 (1951).
It should be recalled that the prior recovery sought and' obtained by plain-tiffs Lusk and Wiener, respectively, extended only to June 30, 1954.

 Plaintiffs stress the fact that, under Reorganization Plan No. 1 of 1954, members of the Foreign Claims Settlement Commission held office “during the pleasure of the President,” whereas the President had lacked the power to remove members of the War Claims Commission (Wiener v. United States, supra). Also, plaintiffs point out that, in 1962, Congress amended the War Claims Act to provide that, in the future, members of the Foreign Claims Settlement Commission would have fixed terms of office. 76 Stat. 1113 (1962), 50 U.S.C. App. § 2001 (Supp. V, 1959-63).

 Section 5(a) of the Reorganization Act of 1945, ch. 582, § 5(a), 59 Stat. 615, provided, in part, as follows:
“* * * No reorganization plan shall provide for, and no reorganization under this Act shall have the effect of—
* * * * *
“(6) imposing, in connection with the exercise of any quasi-judicial or quasi-legislative function possessed by an independent agency, any greater limitation upon the exercise of independent judgment and discretion, to the full extent authorized by law, in the carrying out of such function, than existed with respect to the exercise of such function by the agency in which it was vested prior to the taking effect of such reorganization; except that this prohibition shall not prevent the abolition of any such function ; * * *”

 On January 13, 1949, the Honorable Herbert Hoover, Chairman of the Commission on Organization of the Executive Branch of the Government, sent to each House a letter containing recommendations as to legislation on reorganizations. These letters were included in the respective reports. See S. Rep. No. 232, 81st Cong., 1st Sess. 2 (1949), and H.R. Rep. No. 23, 81st Cong., 1st Sess. 3 (1949).

 These statements were contained in the letters referred to in footnote 6, supra.

 Since we have determined, on the basis of the language and tbe legislative history of the Reorganization Act of 1949, that plaintiffs’ interpretation is not correct, we deem unnecessary discussion of the arguments as to the “contemporaneous construction” of that act.

 Citing Greene v. McElroy, 360 U.S. 474, 507 (1959), plaintiffs assert that congressional inactivity cannot cure the invalidity of the exercise by the executive of power not delegated or not properly delegated. One difficulty with this assertion is that plaintiffs appear to overlook the specific function, under the Reorganization Act of 1949, of “congressional inactivity.” See the discussion, supra, of legislative-executive cooperation under the 1949 act. The facts of Greene v. McElroy are readily distinguishable from those of the present case.

 Regarding the matter of the delegation of legislative power, plaintiffs cite the following cases: Yakus v. Unites States, 321 U.S. 414 (1944); A.L.A. Schechter Poultry Corp. v. Unites States, 295 U.S. 495 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388 (1935).

 In declining to discuss the constitutional issues, we are mindful of the general policy that constitutional questions should not be decided unless it is absolutely necessary to do so. Cf., e.g., Unites States v. International Union Unites Automobile Workers, 352 U.S. 567, 590 (1957).

 It might be argued that no such suit could succeed since decisions of the Foreign Claims Settlement Commission are entitled to finality. See, e.g., § 11 of the War Claims Act of 1948, 62 Stat. 1246, as amended, 60 U.S.C. App. § 2010 (Supp. V, 1959-63). However, a dissatisfied claimant could assert that Congress could not give finality to the determinations of an agency created by an unlawful reorganization plan. It would seem that the finality provision presupposes the validity of the Foreign Claims Settlement Commission.