UNITED STATES of America,
Plaintiff–Appellee,

v.

Harry E. CLAIBORNE,
Defendant–Appellant.

No. 88–1656.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1989.

Decided March 22, 1989.

Annette R. Quintana, Las Vegas, Nev., for defendant-appellant.

Harry E. Claiborne, Las Vegas, Nev., pro se.

Daniel R. Schiess and Susan J. Park, Public Integrity Section, Criminal Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before NORRIS, NOONAN, and LEAVY, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

On December 8, 1983, a federal grand jury returned an indictment charging appellant Harry Claiborne, then a United States District Judge for the District of Nevada, with bribery, tax fraud, and making a false statement to the Judicial Ethics Committee. Chief Justice Burger designated Senior District Judge Walter Hoffman to preside over appellant's trial. Chief Justice Burger had received a certificate of necessity from Judge Browning, Chief Judge of the Ninth Circuit, pursuant to 28 U.S.C. § 292(d) (1982). Judge Browning also certified to Chief Justice Burger on January 14, 1985 the need for out-of-circuit circuit judges to preside over appellant's pretrial appeals and all other appeals involving appellant, pursuant to 28 U.S.C. § 291(a) (1982). Acting on that request, Chief Justice Burger designated Judges Floyd R. Gibson of the Eighth Circuit, Leonard I. Garth of the Third Circuit, and Cornelia G. Kennedy of the Sixth Circuit.

Appellant's pre-trial motion to dismiss the indictment on the ground that a federal judge cannot be prosecuted for a federal crime without first being impeached was denied by Judge Hoffman, and his ruling was affirmed on appeal by the panel of Judges Gibson, Garth, and Kennedy. *United States v. Claiborne,* 727 F.2d 842 (9th Cir.1984). After a first trial ended in a hung jury, the bribery charges were dismissed. Appellant was then convicted by a jury of making false statements in his tax returns for 1979 and 1980 in violation of 26 U.S.C. § 7206(1) (1982).

The conviction was affirmed by a panel comprised of Judges Wilbur F. Pell, Senior Circuit Judge for the Seventh Circuit, J. Edward Lumbard, Senior Circuit Judge for the Second Circuit, and Robert H. McWilliams, Senior Circuit Judge for the Tenth Circuit. *United States v. Claiborne,* 765 F.2d 784 (9th Cir.1985). This panel was also designated by Chief Justice Burger pursuant to the original certificate of necessity Chief Judge Browning had issued on January 14, 1985. For reasons that are not apparent from the record, Judge Browning issued a second, seemingly superfluous, certificate of necessity after the second panel began considering appellant's post-conviction appeal.

After his conviction was affirmed by the out-of-circuit panel, appellant filed a suggestion for rehearing *en banc.* The suggestion was rejected by a majority of the active judges who did not recuse themselves. Unpublished Order filed December 10, 1985. This marked the first time judges of the Ninth Circuit participated in the decision-making process in appellant's criminal proceedings.

After his suggestion for rehearing *en banc* was rejected, appellant returned to the district court and moved to stay the execution of his sentence, arguing that imprisoning a federal judge who had not yet been impeached was unconstitutional. Judge Hoffman denied the stay, and on appeal his order was affirmed by a regular panel of Ninth Circuit judges. *United States v. Claiborne,* 790 F.2d 1355 (9th Cir.1986). *En banc* consideration of the motion to stay execution of the sentence was rejected by a majority of the non-recused active judges of our court. *Id.* at 1356.

Next, appellant filed a § 2255 motion in district court, together with a motion to have his § 2255 motion heard by someone other than Judge Hoffman. After Judge Hoffman decided that *he* would rule on the § 2255 motion, our court rejected appellant's request that we order that a differ-

ent judge hear the § 2255 motion. Unpublished Order filed February 5, 1987. Judge Hoffman then ruled on appellant's § 2255 motion, denying relief on all grounds. This ruling by Judge Hoffman is the subject of the present appeal.

Appellant challenges Judge Hoffman's denial of his § 2255 motion on a variety of grounds. First, he claims that the designation of Judge Hoffman violated 28 U.S.C. § 292(d)—the statutory provision which governs the designation of out-of-circuit district judges—because Chief Judge Browning did not poll all the district judges in the Ninth Circuit as to their availability to preside over appellant's case before certifying to Chief Justice Burger the need for an out-of-circuit district judge.

In a similar vein, appellant argues that the designations of Circuit Judges Pell, Lumbard, and McWilliams[1] violated 28 U.S.C. §§ 46(b) and 291(a) because Chief Judge Browning did not poll all the circuit judges of the Ninth Circuit as to their availability to hear appeals in the Claiborne case before certifying to Chief Justice Burger the need for out-of-circuit circuit judges.

Finally, appellant challenges the designations of Judge Hoffman and the out-of-circuit circuit judges on constitutional grounds. Appellant contends that principles of due process and equal protection mandate random selection of out-of-circuit judges, and that Chief Justice Burger did not select any of the judges on a random basis.

In addition, appellant argues that (1) he was denied due process during the § 2255 proceedings because Judge Hoffman was biased against him; (2) the government unconstitutionally participated in a break-in of his residence in 1981 to obtain evidence against him; (3) the prosecutor knowingly permitted false information to be presented to the grand jury which returned the indictment; (4) he is entitled to a new trial because of the post-trial discovery of two witnesses whose testimony would have

tended to exculpate him; and (5) he was deprived of effective assistance of counsel.

## I

■ Before reaching the merits of appellant's challenges to the designations of the out-of-circuit judges, we must deal with the government's contention that appellant has no standing to make these challenges. The government argues that *McDowell v. United States*, 159 U.S. 596, 16 S.Ct. 111, 40 L.Ed. 271 (1895), denies standing to a party to contest the authority of a judge once the judge has decided the case. We reject this argument on the authority of *Glidden Company v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). In upholding the standing of a party to challenge the authority of an Article I judge to hear Article III cases, the *Zdanok* Court limited the "standing" bar discussed in *McDowell* to cases in which the judge's authority is not challenged at "the earliest practicable moment." *Id.* at 535, 82 S.Ct. at 1465. In so limiting *McDowell*, the Court in *Zdanok* reasoned that denying a litigant standing to challenge judicial authority makes sense only inasmuch as it reflects "an obviously sound policy of preventing litigants from abiding the outcome of a lawsuit and then overturning it if adverse upon a technicality of which they were previously aware...." *Id.*

In the instant case appellant *did* challenge the judicial designations "at the earliest practicable moment," because he had no way of knowing the facts of the designation process until he read Judge Reinhardt's published dissent from our court's rejection of appellant's first suggestion for rehearing *en banc.*

■ On the merits, we reject appellant's challenges to the designations of the out-of-circuit judges. Appellant argues that the designation of Judge Hoffman violated § 292(d) because Chief Judge Browning did not poll all the district judges in the Ninth Circuit before certifying to Chief Justice Burger the need for an out-of-circuit district judge. The language of § 292(d),

---

**1.** Appellant does not challenge the designation of the first appellate panel, comprised of Judges

Gibson, Garth and Kennedy, on any ground.

however, does not on its face require such a poll and we see no justification for adding such a requirement to the statute. Section 292(d) merely provides that "[t]he Chief Justice of the United States may designate and assign temporarily a district judge of one circuit for service in another circuit upon presentation of a certificate of necessity by the chief judge or circuit justice of the circuit wherein the need arises." Thus, the statute authorizes the Chief Justice to designate out-of-circuit district court judges whenever a chief judge of a circuit certifies "a need." There is no suggestion in the statute that the chief judge does not have broad discretion to determine what constitutes "a need." Nor does appellant cite any legislative history or caselaw to support his contention that Chief Judge Browning was required by § 292(d) to conduct a poll of all Ninth Circuit district judges before issuing a certificate of need. As Judge Hoffman noted below, such a requirement would indeed be onerous, given the number and geographical distribution of district judges who sit in the Ninth Circuit. Excerpt of Record (ER) at 39. We decline to read such a requirement into the statute.

■ We find a bit more difficult appellant's argument that the designations of the out-of-circuit *circuit* judges violated the federal statutory scheme governing judicial designations because Judge Browning did not poll all circuit judges in the Ninth Circuit as to their availability to preside over appeals in the Claiborne matter before seeking circuit judges outside the Ninth Circuit. The designations of these circuit judges were made pursuant to § 291(a). Section 291(a) tracks the language of § 292(d), and contains no requirement that the chief judge conduct a poll of all in-circuit judges.[2] Appellant does, however, point to another statutory provision, 28 U.S.C. § 46(b), which appellant argues

supplements § 291(a). Section 46(b) provides: "[i]n each circuit the court may authorize the hearing and determination of cases and controversies by separate panels, each consisting of three judges, at least a majority of whom shall be judges of the court, unless such judges cannot sit because recused or disqualified, or unless the chief judge of that court certifies there is an emergency including, but not limited to, the unavailability of a judge of the court because of illness...."

Appellant argues that § 46(b), which reflects a strong Congressional preference for circuit court judges to decide cases in their own circuit, was violated in his case because there was no finding that at least two in-circuit judges could not hear his case. Even § 46(b), however, indicates that the preference for in-circuit judges can be overcome when the chief judge certifies an emergency. Notably, there is no requirement in § 46(b) that the "emergency" turn on the unavailability of all the in-circuit judges. In this case Chief Judge Browning effectively certified an emergency for the purposes of § 46(b) when he certified a necessity under § 291(a).

■ Thus, under both § 291(a) and § 46(b), the chief judge retains a great deal of discretion in deciding when out-of-circuit judges are needed. We decline to cabin this discretion under either of these provisions by imposing upon a chief judge of a circuit a duty to poll all in-circuit judges before seeking out-of-circuit circuit judges.

Appellant relies upon two cases to support his argument that there is duty to poll under § 291(a). In *Meeropol v. Nizer*, 429 U.S. 1337, 97 S.Ct. 687, 50 L.Ed.2d 729 (1977), Justice Marshall, acting alone in chambers in his capacity as Circuit Justice of the Second Circuit, refused to certify to the Chief Justice the need for out of circuit judges to preside over petitioners' case,[3] in

2. Section 291(a) provides in relevant part:
   The Chief Justice of the United States may designate and assign temporarily any circuit judge to act as circuit judge in another circuit upon presentation of a certificate of neccessity by the chief judge or circuit justice of the circuit wherein the need arises.

3. Petitioners were the sons of Julius and Ethel Rosenberg, who were executed in 1953 after

their convictions for conspiracy to commit espionage. The petitioners sought to have judges outside the Second Circuit hear their copyright infringement action because they believed all Second Circuit judges are the "friends," "associates," and "consultants" of Second Circuit Chief Judge Irving Kaufman, who presided as a district judge over the Rosenberg trial and imposed

part because all the judges of the Second Circuit had not recused themselves. Similarly, in *United States v. Nixon*, 827 F.2d 1019 (5th Cir.1987), a three-judge panel of the Fifth Circuit upheld the chief judge's decision not to seek out-of-circuit judges in a particular case, holding that he was not required to invoke § 291(a) so long as there were enough Fifth Circuit judges to hear the case who had not recused themselves.

Standing alone, these cases do not carry the day for appellant. The solo opinion by Justice Marshall in *Meeropol* is not, of course, binding precedent. More importantly, *Meeropol* and *Nixon* were cases in which a circuit justice and chief judge exercised their discretion not to invoke § 291(a). These cases are not authority that it is an abuse of discretion for a circuit justice or a chief judge to invoke § 291(a) when he believes the circumstances so dictate, even if in-circuit judges are available to hear the case.

Nor does appellant argue that Chief Judge Browning abused his discretion under § 291(a) in any other way. Appellant does not claim, nor is there any evidence to suggest, that Chief Judge Browning's motives were improper or that his actions were irrational. Indeed, given the extent to which circuit and district judges within a circuit deal with each other on professional and personal levels, Chief Judge Browning's apparent conclusion that the appearance of justice would be served by having appellant's appeals heard by impartial judges from outside the Ninth Circuit seems eminently reasonable. In this regard we note that district judges often sit with circuit judges by designation, *see* 28 U.S.C. § 292(a) (1982), and are required by statute to attend the same judicial conference. 28 U.S.C. § 333 (1982).

■ For these reasons we conclude that none of appellant's statutory claims have merit. We also reject the claim that Chief Justice Burger violated appellant's constitutional rights to due process and equal protection by not selecting the out-of-circuit judges randomly. Appellant cites no authority to support his contention that the

the death sentences. 429 U.S. at 1338, 97 S.Ct. at 689.

Constitution requires randomness. The one case he does cite in which a similar claim was raised did not decide the question at all. *See Cruz v. Abbate*, 812 F.2d 571 (9th Cir.1987).

In addition to this lack of authority, appellant makes no persuasive argument that randomness is or should be required. We see no constitutional reason why cases could not be assigned, for example, on the basis of a judge's expertise. This is not to say that a random system may not be fair or desirable; it is only to say that appellant has not shown that anything less violates the Constitution. It also bears mentioning here that appellant does not claim that any of the judges in his trial or post-trial appeals was actually biased against him.[4] He does not, in other words, claim that he has been denied his due process right to have impartial judges preside over his case. Nor does he claim that he is a member of any suspect class which would warrant heightened scrutiny for equal protection purposes. Finally, appellant does not dispute that all the judges who presided over his case were in fact Article III judges. In sum, appellant has failed to demonstrate any constitutional violation.

## II

■ We now turn to the other claims appellant raises in his § 2255 motion. First, appellant claims Judge Hoffman was biased against him in the § 2255 proceedings. Although appellant cites various statements made by Judge Hoffman which he argues demonstrates Judge Hoffman's prejudice, we believe these statements, read in context, fall far short of manifesting prejudice. For example, appellant claims that Judge Hoffman was anxious to hear the § 2255 motion and zealously sought to be redesignated to preside over it. The letter appellant cites in support of this contention, however, merely indicates that Judge Hoffman, who had already been asked by Judge Browning to preside over the § 2255 proceedings, thought he needed a new designation from the Chief Justice

4. He does claim that Judge Hoffman was biased in the § 2255 proceedings. *See* below, infra.

before he could comply with Browning's request. In sum, as Judge Hoffman himself observed, "much has been written [by appellant] about bias and prejudice, with absolutely nothing being proven." ER at 40.

Appellant next claims that the government broke into his house in 1981 to steal evidence to use against him. Judge Hoffman conducted an evidentiary hearing on this issue and concluded, after weighing the evidence, that no break-in occurred. In arriving at this conclusion Judge Hoffman credited the testimony of witnesses Rybar and Caputo, and discredited the testimony of witness Johnson. This finding of fact based upon the credibility of witnesses is not something we are free to second-guess.

Next, appellant claims that the prosecutor, Jerry Shaw, knowingly permitted witness Jerry Watson to testify falsely before the grand jury and thereafter refused Watson permission to correct the testimony. Judge Hoffman found no basis for believing that Shaw knew that Watson had testified falsely in any way. He also afforded Watson every reasonable opportunity to correct any past testimony. Finally, Judge Hoffman found that Watson *did* communicate with the grand jury in a written statement, clarifying his earlier testimony. ER at 21. These factual findings are not clearly erroneous. *See* Fed.R.Civ.P. 52(a).

■ Appellant next argues that he is entitled to a new trial because he discovered after trial that the testimony of a Kenneth Swanson would have helped him prove his innocence. Appellant asserts that the Senate impeachment proceedings during the Fall of 1986 revealed that Swanson could have testified as to appellant's tax preparer's receipt of a letter that would have been exculpatory for appellant. However, since Swanson's impeachment testimony indicated only that appellant's secretary Judy Ahlstrom visited appellant's tax preparer's office on an unspecified date in either 1979 or 1980 and delivered something (Swanson could not say what), it is highly improbable that Swanson's testimony at trial would have changed anything. Thus, this claim was properly rejected.

Appellant similarly claims he learned from the impeachment proceedings that the testimony of Ellen Arthur, who was employed by appellant's tax preparer, would have been helpful at trial. Appellant insists that Arthur resembles Mrs. Wright, the person to whom the exculpatory letter was supposed to have been given by Judy Ahlstorm. Appellant hopes to show that Ahlstorm may have given the letter to Arthur, who may have lost it. When Judge Hoffman invited appellant to have Arthur testify at the § 2255 hearing, however, appellant declined. As a result, it is difficult to accept appellant's argument that Arthur's testimony would have changed the outcome of the trial. As Judge Hoffman put it, "if sentences under 28 U.S.C. § 2255 are to be vacated based upon an affidavit not otherwise supported, no conviction can ever stand." ER at 27.

Finally, appellant claims ineffective assistance of counsel. According to appellant, this ineffective assistance occurred when his trial attorney, Rich Johnston, failed to a) examine Jerry Watson concerning Watson's claim that two Internal Revenue Service employees verified Watson's preparation of Schedule D of appellant's 1980 tax return, b) examine Watson concerning conflicting statements he made during the first and second trials about lost client files, and c) introduce evidence of appellant's 1979 amended tax return at trial.

■ Under the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), appellant must show that his counsel's errors were so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and that the deficiency prejudiced appellant so that the result of the trial is unreliable. In applying the first prong, it is clear that a reviewing court is not free to engage in after-the-fact second-guessing of strategic decisions made by defense counsel. Instead, judicial scrutiny of "counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. To satisfy the second prong, the defendant must demonstrate a reasonable probability

that the result of the proceeding would have been different.

■ With these refinements in mind, we have little trouble concluding that appellant has not satisfied either of the *Strickland* prongs. As Judge Hoffman noted, ER at 30, there are plausible reasons for everything Johnston did or did not do. For example, Johnston knew that no amended return had been filed in 1980, and calling this fact to the attention of the jury in an examination of Watson would have been dangerous. Moreover, even if Johnston's decisions amounted to deficient counsel, appellant has failed to demonstrate a reasonable probability that the result of the trial would have been different had counsel been adequate. In short, the ineffective assistance claim must fail.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.