STATE of Utah, Plaintiff and Appellee,

v.

Duane ELLIFRITZ, Defendant and Appellant.

No. 910478–CA.

Court of Appeals of Utah.

May 27, 1992.

Tom Jones, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen. and J. Kevin Murphy (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

██ Defendant, Duane Ellifritz, appeals from his conviction for aggravated sexual assault, a first degree felony, in violation of Utah Code Annotated section 76–5–405 (1990). We affirm.

## FACTS [1]

During the night and early morning of June 11–12, 1990, defendant, his stepdaughter, T.N., and her friend, J.K., consumed alcohol and played strip poker at the home of defendant and T.N. Both of the young women were fifteen years old. J.K. alleged that after the poker game, defendant caressed her breasts and made lewd advances toward her.

J.K. became ill from her consumption of alcohol and went into the bathroom to take a bath. She heard T.N. calling out from defendant's bedroom. J.K. went into the bedroom and saw defendant on top of T.N. Both defendant and T.N. were naked. T.N. left the bedroom and, wearing only a towel, ran to a neighbor's house. The neighbor called the police. The police arrived and

---

1. On appeal, we state the facts favorably to the jury verdict. *State v. Johnson,* 821 P.2d 1150, 1153 (Utah 1991).

took T.N. to a hospital emergency room. According to the examining physician, T.N. sustained injuries consistent with an attempted rape or actual intercourse. She had a bleeding tear in the genital area and a number of abrasions and bruises on various parts of her body.

Defendant denied that he had sexually assaulted T.N. or made sexual advances toward J.K. He maintained that the girls' screaming and drunken behavior had awakened him, and insisted that the remainder of their story was a fabrication.

Defendant was charged by information with two criminal counts. Count I was aggravated sexual assault, a first degree felony, for his alleged attack on T.N., and Count II was forcible sexual abuse, a second degree felony, for his conduct with J.K.

Prior to trial, the court conducted voir dire questioning of prospective jurors. The court asked questions which defense counsel and the prosecutor had submitted to the court. The court conferred with defense counsel and the prosecutor at the beginning of and at least twice during the voir dire process. The judge and both attorneys met in chambers after voir dire was completed. Defendant requested that he be excused in order to use the bathroom. In chambers, the judge gave his view of which panelists should be excused for cause. He also suggested a list of panelists who might properly be considered for the jury. Both attorneys were asked for their responses to these proposed lists. After discussion, neither attorney disagreed with either the judge's list of panelists challengeable for cause or the list of prospective jurors.

After challenges for cause, thirteen of the original twenty-three prospective jurors remained. The trial court informed counsel that a trial could only proceed if some of the peremptory challenges were waived. The prosecution waived two and defense counsel waived one. They alternately exercised the remaining five peremptory challenges, and the final jury of eight was impaneled.

Count I of the information, the aggravated sexual assault charge, was amended twice prior to trial. The second amended information read as follows on Count I:

AGGRAVATED SEXUAL ASSAULT, a First Degree Felony, in violation of Section 76–5–405 ... in that Duane Ellifritz did, on or about June 11, 1990 ... in the course of a rape or attempted rape, or forcible sodomy did cause bodily injury to [T.N.].

There is no indication in the record that the information was ever read to the jury. The prosecutor, however, did define aggravated sexual assault in his opening statement as follows: "It will be explained to you that aggravated sexual assault means either rape, attempted rape, sodomy—forcible sodomy ... forcible sexual abuse or attempted forcible sexual abuse when somebody is injured."

When jury instructions were presented, the instruction on aggravated sexual assault omitted the reference to "forcible sodomy" that had appeared in the information and instead stated:

[P]roof of the commission of the crime of Aggravated Sexual Assault as charged in Count I of the Information requires proof beyond a reasonable doubt of each of the following: That Defendant ... did, during the course of a rape, attempted rape, forcible sexual abuse, or attempted forcible sexual abuse; cause bodily injury to [T.N.].

Instead of repeating the exact language of the information, the jury instruction used the statutory definition of aggravated sexual assault found in Utah Code Annotated section 76–5–405 (1990), but deleted the reference to sodomy. Defense counsel did not object to the instruction nor did he object to other instructions which defined forcible sexual abuse.

After a trial, the jury found defendant guilty of aggravated sexual assault, but acquitted him of forcible sexual abuse.

We address three issues raised by defendant on appeal: (1) Did the trial court commit reversible error in the jury selection process; (2) Did the trial court commit reversible error when it presented a

jury instruction on aggravated sexual assault that correctly stated the law but differed from the language in the information charging defendant; and (3) Does defense counsel's failure to object to the jury selection process or to the jury instruction constitute ineffective assistance of counsel?

## STANDARD OF REVIEW

At trial, defense counsel passed the jury for cause, and did not object to the jury instructions. When objections are not made at trial and properly preserved, appellate review is under a "plain error" standard. Plain errors are those that "should have been obvious to the trial court and that affect the substantial rights of the accused." *State v. Morgan*, 813 P.2d 1207, 1210–11 (Utah App.1991) (citing *State v. Eldredge*, 773 P.2d 29, 35 (Utah), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989)); Utah R.Evid. 103(d).[2] The appellant must be able to demonstrate a reasonable likelihood that absent the plain error, the outcome at trial "would have been more favorable." *State v. Verde*, 770 P.2d 116, 122 (Utah 1989). There is a sufficient likelihood of a different result when the appellate court's confidence in the verdict is undermined. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *State v. Knight*, 734 P.2d 913, 919–20 (Utah 1987).

Defendant also raises the issue of ineffective assistance of counsel as an alternative means to have the alleged jury selection and jury instruction errors examined on appeal. A defendant who claims ineffective assistance of counsel must show both that his or her counsel rendered a deficient performance in some demonstrable manner and "that a reasonable probability exists that except for ineffective counsel, the result would have been different." *Verde*, 770 P.2d at 118–19 (quoting *State v. Lovell*, 758 P.2d 909, 913 (Utah 1988)); *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Defendant has the burden of demonstrating that counsel's "performance fell below an objective standard of reasonable professional judgment," *State v. Carter*, 776 P.2d 886, 893 (Utah 1989), and that counsel's actions were not conscious trial strategy. *See State v. Jones*, 823 P.2d 1059, 1063 (Utah 1991); *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989). Also, when counsel makes a "conscious decision to refrain from objecting," we may decline to consider an argument of plain error. *Bullock*, 791 P.2d at 158–59.

When defendant raises the issues of both plain error and ineffective assistance of counsel, "a common standard is applicable." *Verde*, 770 P.2d at 124 n. 15. The common standard exists because plain error requires a showing that absent the error, there is a substantial likelihood of a more favorable outcome for defendant, and similarly, the ineffective assistance standard requires a showing that but for ineffective assistance of counsel, the result would likely have been different for defendant. Failure to meet the plain error requirement of prejudice means that defendant likewise fails to meet the required showing under the ineffective assistance of counsel standard. *See Verde*, 770 P.2d at 124.

We review the trial court's participation in the jury selection process from the record, and therefore determine as a matter of law whether procedural error occurred and further, whether the error affected defendant's substantial rights. *See* Utah R.Crim.P. 30(a) (an error which does not affect the defendant's substantial rights shall be disregarded).

When a trial court rejects counsel's challenge for cause to a particular juror, the standard of appellate review is whether the trial court abused the broad discretion it is afforded in seating a fair and impartial jury. *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988); *State v. Woolley*, 810 P.2d 440, 442 & n. 2 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991). Challenges to jury instructions ordinarily

---

**2.** Utah Rule of Evidence 103(d) states: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."

present a question of law, reviewed on appeal without deference to the trial court. *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992).

 When the question of trial counsel ineffectiveness is raised for the first time on appeal and our review is confined to the trial court record, we determine, as a matter of law, whether defense counsel's performance constituted ineffective counsel. *State v. Johnson*, 823 P.2d 484, 487–88 (Utah App.1991).

### JURY SELECTION

#### Procedure

Defendant argues that the trial court departed from statutorily mandated procedures for impaneling the jury, and in doing so, improperly insinuated itself into the jury selection process, depriving defendant of a fair trial.

Utah Rule of Criminal Procedure 18 delineates the following method for jury selection:

(a) The clerk shall draw by lot and call the number of the jurors that are to try the cause plus such an additional number as will allow for all peremptory challenges permitted. After each challenge for cause sustained, another juror shall be called to fill the vacancy before further challenges are made, and any such new juror may be challenged for cause. When the challenges for cause are completed, the clerk shall make a list of the jurors remaining, and each side, beginning with the prosecution, shall indicate thereon its peremptory challenge to one juror at a time in regular turn, as the court may direct, until all peremptory challenges are exhausted or waived....

(b) The court may permit counsel or the defendant to conduct the examination of the prospective jurors or may itself conduct the examination. In the latter event, the court may permit counsel or the defendant to supplement the examination by such further inquiry as it deems proper, or may itself submit to the prospective jurors additional questions requested by counsel or the defendant.

(c) A challenge may be made to the panel or to an individual juror.

. . . . .

(2) A challenge to an individual juror may be either peremptory or for cause....

(d) A peremptory challenge is an objection to a juror for which no reason need be given.... In ... felony cases [other than capital cases] each side is entitled to four peremptory challenges....

(f) Peremptory challenges shall be taken first by the prosecution and then by the defense alternately. Challenges for cause shall be completed before peremptory challenges are taken.

Defendant contends that the court's failure to precisely follow the procedures in Rule 18 resulted in an improper jury. More specifically, defendant argues that the court committed reversible error by not initially calling only enough veniremen to constitute a jury plus the number necessary for peremptory challenges; by not calling for additional jurors as challenges for cause were sustained; by making a list of panelists to be challenged for cause instead of allowing counsel for both parties to make the challenges; by not allowing the full statutory number of peremptory challenges; and generally, by hurrying the jury selection process along.

 Trial courts are responsible for safeguarding a defendant's constitutional right to an impartial jury. *State v. Woolley*, 810 P.2d 440, 442 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991). A defendant has the right to have voir dire questions posed which will "assist counsel in the intelligent use of peremptory challenges ... [and provide] adequate information with which to evaluate prospective jurors." *State v. Sherard*, 818 P.2d 554, 558 (Utah App.1991). "On appeal, an appellant has the burden of establishing that reversible error resulted from an abuse of discretion" during the jury selection process. *State v. Bishop*, 753 P.2d 439, 448 (Utah 1988).

 The record in this case reveals that the trial court, the prosecution, and defense

counsel considered the entire body of twenty-three prospective jurors as a group, rather than in the sequence set forth in Rule 18(a). The court questioned the panelists using queries that both counsel had submitted, and also posed its own questions. Panelists were asked questions such as whether they had stepchildren, or were stepparents, whether they knew defendant or any of the witnesses, whether they had heard about the case through the media or other sources, and the effect of any prior knowledge about the case on their ability to remain impartial.

Based on their responses, individual panelists were singled out and their potential bias or strong feelings about the case were discussed by both counsel and the court in chambers. After this discussion, in which counsel freely participated and expressed concern about individual panelists, the court proposed a list of possible challenges for cause and prospective jurors. Both the prosecutor and defense counsel concurred with the partial list. Certain panelists about whom the judge and defense counsel had expressed concern were questioned further in chambers. Defense counsel suggested questions to the court to further probe possible bias, and the court conducted the questioning.

After completing challenges for cause, thirteen prospective jurors remained. Neither side objected to the court's observation that a "good jury" could be obtained from those thirteen persons. At the court's suggestion, the prosecution waived two peremptory challenges and the defense waived one.

Nothing in the process the trial court utilized suggests a material deviation from the Rule 18 method of jury selection that resulted in prejudice to defendant. Defendant has failed to identify with any particularity how his substantial rights were undermined by the procedural variances the

court followed. Our review of the record indicates no heavy-handedness by the court or insistence on particular jurors, but only an agreed upon method of expediting jury selection, one in which defense counsel fully participated. We therefore find no reversible error in the procedure followed by the court.

### Challenges For Cause

In further support of his argument of improper jury selection, defendant argues that four panelists who should have been excused for cause were retained on the prospective juror list.[3] He claims their retention prejudiced his right to a fair and impartial jury, and required his counsel to exercise peremptory challenges unnecessarily. Since defense counsel did not challenge any of the four for cause, we must determine if that failure constituted ineffective assistance of counsel, or if the court's failure to excuse the jurors for cause itself was plain error.[4]

Two of the available grounds upon which challenges for cause under Rule 18 may be taken are the following:

(4) the existence of any social, legal, business, fiduciary or other relationship between the prospective juror and any party, witness or person alleged to have been victimized or injured by the defendant, which relationship when viewed objectively, would suggest to reasonable minds that the prospective juror would be unable or unwilling to return a verdict which would be free of favoritism....

(14) [when] a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging....

Utah R.Crim.P. 18(e)(4) and (14).

"[T]rial courts *must* adequately probe a juror's potential bias when that juror's re-

---

**3.** Defendant actually complains of five jurors in his brief, one of whom is panelist Batty. After discussion in chambers, Mr. Batty was excluded from the court's list of appropriate prospective jurors. He was effectively challenged for cause, and therefore, defendant has no basis upon which to complain about this panelist.

**4.** Because of our disposition on the plain error and ineffective assistance of counsel issues we do not reach the issue of whether prejudicial harm resulted.

sponses or other facts suggest a bias." *State v. Woolley*, 810 P.2d 440, 442 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991) (emphasis in the original). "It is prejudicial error to compel a party to exercise a peremptory challenge to remove a prospective juror who should have been removed for cause." *Id.* 810 P.2d at 443 (citing *State v. Gotschall*, 782 P.2d 459, 461 (Utah 1989)); *State v. Julian*, 771 P.2d 1061, 1064 (Utah 1989).

Turning to the panelists about whom defendant complains, he first argues that prospective juror Swain should have been excused for cause. Mr. Swain is the father of eight daughters and had a friend whose daughter had been sexually assaulted. During the discussion in chambers, defense counsel expressed doubt about there being enough grounds to challenge Mr. Swain for cause.

Panelist Karren also should have been stricken for cause, according to defendant. Mr. Karren said he was "remotely" acquainted with two of the State's witnesses. When counsel and the court discussed Mr. Karren's inclusion on the list of potential jurors, both counsel concurred that there was "no problem" with this panelist.

Panelist Hall revealed during voir dire that she had worked for Social Services prior to her retirement. She was questioned further in chambers and there revealed that she had worked as a secretary for Social Services for twenty years, and that while she would "try to be impartial," she would probably be inclined to believe a victim when there were allegations of sexual abuse. Defense counsel declined to ask her any further questions after the court invited him to do so. When the court asked defense counsel whether he felt Ms. Hall should be on the list of prospective jurors, defense counsel answered: "I believe the matter can be taken care of through use of peremptory challenges rather than ask for a cause."

■ Finally, defendant asserts juror McKee should have been challenged for cause. Ms. McKee's son was a highway patrolman, and two of the State's witnesses were friends with her son. The two witnesses served as chain of custody witnesses for physical evidence gathered at defendant's house.[5] In response to the court's questions about Ms. McKee, defense counsel responded, "I'm not going to challenge Mrs. McKee."

Defense counsel used peremptory challenges to remove panelists Swain, Karren and Hall.

■ If defendant had challenged the jurors for cause, our standard of review, as noted earlier, would be an abuse of discretion. The more stringent standard of plain error is appropriate when there was no challenge by counsel, because of our inability, on appeal, to view the jurors and assess their potential bias. Only those present, the court and counsel, have that advantaged view. That notion also buttresses our view that defense counsel reasonably exercised professional judgment as to trial strategy in each of these instances and consciously did not challenge for cause. It is clear from the record of the in-chambers session, that defense counsel intentionally, not through inadvertence, decided not to challenge the four jurors for cause and to exercise peremptory challenges to three of them. *See State v. Bullock*, 791 P.2d 155, 158–59 (Utah 1989) (appellate courts would sanction invited error if we allow claim of plain error when counsel does not object to evidence as part of trial strategy).

■ We also note that reviewing the voir dire process as a whole, particularly responses indicating an ability to be impartial, the panelists complained of by defendant did not clearly exhibit feelings of bias that were so "strong and deep" that it should have been obvious to the court that they should have been excused for cause. *State v. Lacey*, 665 P.2d 1311, 1312 (Utah 1983) (per curiam). Rather, the responses could reasonably be viewed as constituting "the product of a 'light impression' and not

---

**5.** Contrary to defendant's argument in his brief, Rule 18(e)(4) applies only to state employees and does not automatically disqualify even state employees. Since Ms. McKee, herself, was not a state employee, the rule has no application.

one that would 'close the mind against the testimony that may be offered in opposition.'" *State v. Cobb*, 774 P.2d 1123, 1127 (Utah 1989) (quoting *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988)). Therefore, retention of the panelists on the court's list of prospective jurors, absent objection, was not plain error.

■■ We conclude that defendant has failed to carry his burden of demonstrating reversible error by the court in not excusing for cause the four panelists. He also has not established that his counsel's failure to object constitutes the ineffective assistance of counsel.[6]

## JURY INSTRUCTION

Defendant also claims the trial court committed plain error when it included "extraneous" matters in the jury instruction on aggravated sexual assault that were not included in the amended information. The information cites Utah Code Annotated section 76–5–405 (1990)[7] and charges defendant with causing bodily injury to T.N. "in the course of a rape or attempted rape, or forcible sodomy." The jury instruction uses the same wording found in the information except it substitutes the words "forcible sexual abuse, or attempted forcible sexual abuse" in place of "forcible sodomy." Defendant argues that forcible sexual abuse and attempted forcible sexual abuse were allegations not considered in the information from which he was bound over by the circuit court and therefore should not have been submitted to the jury through instructions.[8]

Defendant also argues that because forcible sexual abuse was defined in additional jury instructions, the jury was informed of the elements of the less serious offense, and could have considered it when finding him guilty of aggravated sexual assault. Defendant asserts that the prejudicial impact of the jury instruction viewed in light of all the instructions given, allowed the jury to convict him of aggravated sexual assault without necessarily finding the allegations of the information to be true. In other words, the jury could have found defendant did not rape or attempt to rape T.N., but did forcibly sexually abuse or attempt to forcibly sexually abuse the victim.

As stated previously, when a defendant fails to object to jury instructions at trial, this court will consider alleged errors on appeal only where it falls into the category of plain error. *See* Utah R.Crim P. 19(c) ("Notwithstanding a party's failure to object, error may be assigned to instructions in order to avoid a manifest injustice."). *See State v. Pascual*, 804 P.2d 553, 554 n. 1 (Utah App.1991) ("In most circumstances, the term 'manifest injustice' is synonymous with the 'plain error' standard expressly provided for in Utah R.Evid. 103(d).").

■■ Pursuant to Utah Rule of Criminal Procedure 4(d), the trial court may allow an information to be amended if two conditions are met: (1) no additional or different offense is charged, and (2) the substantial rights of the defendant are not prejudiced. These conditions are met "where the proposed amendment to an information merely recites language of the statute originally

---

**6.** Defendant also argues in his brief that he was prejudiced when he voluntarily excused himself from the discussions held in chambers with the prospective jurors. He requested permission to leave the courtroom in order to find a bathroom, and therefore was not included in the discussions, although his counsel was present and participated. Defendant has failed to support his assertion with any meaningful discussion or citation to statutory or case law. *See* Utah R.App.P. 24(a)(9) (the argument shall contain citations to the authorities upon which appellant relies). Defendant also fails to link his absence to the likelihood of a more favorable outcome if he had remained in chambers.

**7.** Section 76–5–405 defines aggravated sexual assault as follows:
> (1) A person commits aggravated sexual assault if in the course of a rape or attempted rape, object rape or attempted object rape, forcible sodomy or attempted forcible sodomy, or forcible sexual abuse or attempted forcible sexual abuse the actor: (a) causes bodily injury to the victim....

**8.** Utah Rule of Criminal Procedure 4(b) provides that an information's charge shall use "the name given to the offense by common law or by statute or by stating in concise terms the definition of the offense sufficient to give the defendant notice of the charge."

charged." *State v. Ramon*, 736 P.2d 1059, 1062 (Utah App.) (amendment can be as late as last day of trial), *cert. denied*, 765 P.2d 1277 (Utah 1987); *accord State v. Peterson*, 681 P.2d 1210, 1220–21 (Utah 1984).

We conclude that the alleged error in the jury instruction was not prejudicial. If defendant had objected to the deviation in language, the information could easily have been amended to conform with the jury instruction. The information contained the citation to the statute under which defendant was charged, and the prosecution described the offenses contained within the sexual assault statute during opening argument. There was evidence presented at trial supporting theories of rape, attempted rape, and forcible sexual abuse. By finding defendant guilty of aggravated sexual assault, the jury found he caused the victim to suffer bodily injury as a result of defendant's sexual attack, be it sexual abuse *or* rape. Contrary to defendant's assertion on appeal, sexual abuse is not a lesser offense than rape, as both may constitute aggravated sexual assault and are subject to the same range of penalties. Defendant has failed to demonstrate that the deviation in wording between the information and the jury instruction was plain error. He also has failed to establish the reasonable probability of a more favorable result if the information and instruction had been consonant. *State v. Verde*, 770 P.2d 116, 122 (Utah 1989). Our confidence in the jury verdict has not been undermined by defendant's argument.

## CONCLUSION

Our disposition of the jury selection and jury instruction issues is dispositive of defendant's argument that he was denied the effective assistance of counsel. Any error in the jury selection process was harmless and defense counsel exercised reasonable professional judgment in not challenging certain jurors for cause. Further, any error in jury instruction was not prejudicial to defendant. Accordingly, defendant's conviction is affirmed.

GARFF and RUSSON, JJ., concur.