STATE of Utah, Plaintiff and Appellee,

v.

Richard L. TENNYSON, Defendant and Appellant.

No. 910620–CA.

Court of Appeals of Utah.

March 26, 1993.

Earl Xaiz and Hakeem Ishola, Salt Lake City, for defendant and appellant.

Jan Graham and Charlene Barlow, Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Defendant appeals his conviction for burglary of a dwelling, a second degree felony, in violation of Utah Code Ann. § 76–6–202 (1990), and theft, a class B misdemeanor, in violation of Utah Code Ann. § 76–6–404 (1990). While three primary issues are raised on appeal, the most important is the claim that trial counsel was ineffective in handling jury selection. We affirm.

## FACTS

At about midnight on June 23, 1991, Celeste Kelty heard the front door of her house close and then saw defendant walking down her sidewalk with something in his hands. She observed defendant dropping coins as he walked, and she immediately checked her husband's wallet, finding it completely empty. After Ms. Kelty woke her husband, the couple followed defendant. Along the way, they found coins, credit cards, and Mr. Kelty's drivers license. Mr. Kelty returned to the house and recruited his brother-in-law and father-in-law to help apprehend the intruder. The three of them, each brandishing a tennis racket, chased and surrounded defendant.[1] Mr. Kelty could smell that defendant had been drinking, but would later testify that despite his verbal abuse, defendant acted "pretty normal." Shortly thereafter the police arrived and arrested defendant. The next day Ms. Kelty found the contents of her backpack and wallet strewn about the lawn next to her house and further discovered that the screen in the room where the backpack had been kept was torn and broken in half. Defendant was charged with burglary, a second degree felony, and theft, a class B misdemeanor.

During the jury selection process, eleven of the twenty-three prospective jurors responded affirmatively to the court's inquiry of whether they or any of their family members or close acquaintances had ever been victims of burglary, theft, or other serious crimes. The court then asked each of the eleven additional questions, including whether they could be impartial and fair despite their experiences. After the court's initial inquiries, several jurors, including one at defense counsel's request, were individually interviewed in chambers.

Juror Andrews, who was not questioned in chambers, stated that her car had been burglarized and that her home had been broken into twice. The most recent incident occurred five years before trial. Initially, she equivocated when asked whether she could be impartial and fair during the trial. The court probed further:

The court: Well, in your present state of mind do you think that you would be able to fairly weigh this evidence that's going to be presented today?

Ms. Andrews: I think I could.

The court: Let me ask you this: Do you think that if that evidence indicated innocence, not guilty, that you would be able

---

1. At some point before apprehending defendant, the father-in-law discarded his tennis racket for more substantial sporting gear, namely a baseball bat.

to render that kind of a verdict in spite of this experience that you've had?

Ms. Andrews: Yes, I do.

The court: On the other hand, if the evidence indicated guilt, could you render that verdict in spite of this circumstance that you've experienced?

Ms. Andrews: Yeah, I could.

Juror Caldwell's home had been broken into about eight years prior to trial. Before any further questioning by the court, she stated unequivocally: "I don't feel that it would alter my judgment today." When the court probed further, asking her if she could be fair in the present case, she again answered affirmatively. She, too, was not questioned in chambers.

Juror Wolf, the third seated juror who affirmatively answered the court's inquiry, explained that while taking care of a friend's apartment the weekend before trial, someone broke into the apartment and disturbed the premises, but he did not know if anything had been taken. He, too, stated up front that he did not think the experience would affect him, and in response to the court's further inquiry as to whether he could be fair, Wolf answered "yes." In chambers, the following exchange occurred:

The court: .... When I asked the question whether you or any members of your family or friends had ever been charged with a serious crime you raised your hand. Would you tell us about that?

Mr. Wolf: Okay, I've got a brother that married into a family whose young son is in prison. He's in a halfway house now. And we're his only family here in Salt Lake so he's at our home quite a bit. And then my niece married a man that was on parol[e] for breaking in, burglary. And he picked up a gun and fired, threatened somebody and fired through the ceiling and was put back in prison just last week or two. He's been let out again. I go camping with him.

The court: Do you feel that would in any way affect your ability to be impartial to both sides in this case?

Mr. Wolf: I think so. I know yesterday when the home was broken into I was very angry that a person—somebody would break into somebody else's home.

The court: Do you think that you could be fair to both sides?

Mr. Wolf: Probably. I know there's circumstances where people do these things. I probably could.

While still in chambers, defense counsel challenged two other jurors because she felt they could not be impartial. The court granted these two challenges. Nonetheless, Juror Andrews, who had been a burglary victim, and Jurors Caldwell and Wolf, who knew friends or family that had been burglary or theft victims, were seated. Defense counsel used her peremptory challenges on four other jurors, all of whom had some personal experience as victims or who knew victims of a burglary or theft, although it is of course unclear whether that was the reason in each instance for the strike.

During trial, defendant testified specifically as to the types and quantity of alcohol he drank on June 23. According to his testimony, he drank copious amounts of beer and whisky, and smoked three marijuana joints. This was consistent with Mr. Kelty's testimony that defendant reeked of alcohol. Defendant also testified that he could not remember the events which culminated in his apprehension by the Keltys.

Neither the trial judge nor the State had expected Kelty to testify. Furthermore, the State was unaware until defendant testified that he was basing his defense on intoxication. The State notified defendant's trial counsel during an afternoon break of the one-day trial that it intended to call Sergeant Korring, a Utah Highway Patrol officer with specialized training in alcohol intoxication, to testify in response to defendant's testimony concerning his intoxicant-induced amnesia. The trial court overruled defense counsel's objections that (1) the State had not provided earlier notice of Korring as an expert witness and (2) the State did not lay the proper foundation for such testimony.

Sergeant Korring estimated that defendant's blood alcohol level at the time of the burglary would have been 0.37 if he consumed as much as he claimed. This is an extremely high concentration, even for an experienced drinker. Korring based his calculations on factors provided by defendant during his testimony, such as weight, type and quantity of alcohol, and time span of consumption. Korring further testified that a person with that blood alcohol level would have trouble walking and talking, which tended to refute defendant's claimed level of consumption since Mr. Kelty, who apprehended him, testified he had no such problem. On the other hand, Korring conceded that a person with that blood alcohol level could experience blackouts, i.e., loss of memory, for some period while intoxicated. This statement had the potential for aiding defendant since he claimed to have been so drunk that he experienced amnesia.

Defense counsel requested a jury instruction that defendant could be found guilty of the lesser, but not included, offense of public intoxication, a class C misdemeanor. Utah Code Ann. § 76–9–701 (1990). The court refused, and defense counsel unsuccessfully objected to the court's ruling. The jury returned a guilty verdict on both crimes for which defendant was charged.

Through new appellate counsel, defendant raises three primary issues for our review: (1) Defendant received ineffective assistance of counsel because of counsel's inaction involving jurors Andrews, Caldwell, and Wolf; (2) the trial court improperly failed to submit a jury instruction on the misdemeanor offense of public intoxication; and (3) the trial court erred by allowing Sergeant Korring to testify without proper foundation or notice.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

■ Defendant argues that jurors Andrews, Caldwell, and Wolf were biased against him and that trial counsel's failure to challenge these three for cause constituted ineffective assistance of counsel. The United States Supreme Court, in

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), set forth the analytical framework for deciding ineffective assistance of counsel claims under the Sixth Amendment. *See* U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. Consistent with this jurisprudential underpinning, the Court announced a two-prong test to determine whether counsel's performance, in actuality, deprives a defendant of the Sixth Amendment guaranty. Thus, in order to prevail, a defendant first

> must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. *Accord State v. Templin*, 805 P.2d 182, 186 (Utah 1990).

■ To satisfy the first part of the *Strickland* two-prong test, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064. Nonetheless, this court will not second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *State v. Pascual*, 804 P.2d 553, 556 (Utah App. 1991). A defendant must therefore overcome the strong presumptions that counsel's performance fell "within the wide range of reasonable professional assistance" and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting

*Michel v. State,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *Accord Templin,* 805 P.2d at 186. Once a defendant proves that counsel's performance failed the reasonableness test, as measured by prevailing professional standards, he can meet the prejudice prong only by showing there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. If either prong of the *Strickland* test is not established, defendant's claim will fail. *Id.* at 687, 104 S.Ct. at 2064.

■ In cases where a trial court has already ruled on an ineffective assistance claim, the questions of performance and prejudice are mixed questions of law and fact. *Id.* at 698, 104 S.Ct. at 2070. *Accord Templin,* 805 P.2d at 186. Nonetheless, in a case such as the one before us, where the ineffective assistance claim is raised for the first time on direct appeal, we must decide whether defendant was deprived of the effective assistance of counsel as a matter of law. *State v. Ellifritz,* 835 P.2d 170, 175 (Utah App.1992).[2] Despite the application of a standard normally bereft of deference, appellate review of counsel's performance must be highly deferential; otherwise, the "distorting effects of hindsight" would produce too great a temptation for courts to second-guess trial counsel's performance on the basis of an inanimate record. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. As a result, claims of ineffective assistance of counsel rarely succeed. *See State v. Moritzsky,* 771 P.2d 688, 690 (Utah App.1989).

While defendant alerts us to several cases in which *trial courts* erred by not excusing particular jurors for cause, *see, e.g., State v. Brooks,* 631 P.2d 878 (Utah 1981); *State v. Woolley,* 810 P.2d 440 (Utah App.), *cert. denied,* 826 P.2d 651 (Utah 1991), *Ellifritz,* a case concerning an ineffective assistance of counsel claim, is more pertinent to our analysis. *See Ellifritz,* 835 P.2d at 170.

In *Ellifritz,* a defendant convicted of aggravated sexual assault claimed that "counsel's failure to object to the jury selection process ... constitute[d] ineffective assistance of counsel." *Id.* at 174. During voir dire, four jurors provided information that revealed potential bias on their part. The court and counsel questioned those four jurors further in chambers. Defense counsel used peremptory challenges to remove three from the panel, but allowed one, Ms. McKee, to remain. Ms. McKee's son was a highway patrolman, and two prosecution witnesses were his friends. Although defense counsel actively engaged in discussion with the judge about the other three jurors, he did not question Ms. McKee's selection, and upon inquiry from the court, merely responded "I'm not going to challenge Mrs. McKee." *Id.* at 177. The court of appeals noted it was "clear from the record of the in-chambers session that defense counsel intentionally, not through inadvertence, decided not to challenge the four jurors for cause and to exercise peremptory challenges to three of them." [3] *Id.* at 177.

---

**2.** Although some confusion might arise insofar as the *Ellifritz* court later stated that "[t]he more stringent standard of plain error is appropriate when there was no challenge by counsel," such confusion is unwarranted because plain error analysis collapses into the *Strickland* paradigm. *See State v. Ellifritz* 835 P.2d 170, 177 (Utah App.1992). "When defendant raises the issues of both plain error and ineffective assistance of counsel, 'a common standard is applicable.' ... Failure to meet the plain error requirement of prejudice means that defendant likewise fails to meet the required showing [of prejudice] under the ineffective assistance of counsel standard." *Id.* at 174 (quoting *State v. Verde,* 770 P.2d 116, 124 n. 15 (Utah 1989)).

**3.** On appeal, defendant attempts to distinguish *Ellifritz* because Ms. McKee's potentially biasing feelings were not "strong and deep," but instead were "light impressions." *See Ellifritz,* 835 P.2d at 177–78. Distinguishing between strong and deep feelings and light impressions is a component of the analysis to determine whether *a court* erred in failing to dismiss a biased juror for cause. *See State v. Moton,* 749 P.2d 639, 642–43 (Utah 1988); *State v. Brooks,* 631 P.2d 878, 883–84 (Utah 1981). Thus, when a juror expresses light feelings short of bias, coupled with a willingness to fairly consider the evidence, a court does not err by refusing to dismiss a juror for cause. On the other hand, when voir dire inquiries elicit a strong emotional response, reflecting strong and deep feelings

A strikingly similar situation exists in the present case. The trial court initially questioned prospective jurors to ferret out potential biases. The court and counsel retired to chambers where the court upon its own initiative questioned two jurors. A third juror was brought into chambers and questioned pursuant to a request for further query by defense counsel.

After the in-chambers inquiries ended, defense counsel requested, and the court granted, two challenges for cause based on the fact that those two jurors had been victims of crimes and appeared unable to view the case impartially. One of them volunteered that she was unsure whether she could be impartial, as the burglary in her own experience was a very trying event for her husband, while the other responded that he may be prejudiced in the case. Defense counsel also requested a for-cause dismissal of one juror who had potential problems juggling her child care should the trial last two days and another juror who claimed that sitting on the jury would be a financial burden. The court refused both requests and counsel peremptorily challenged the former,[4] while the latter was not selected for the jury because she was at the end of the juror list.

The present case presents the inevitable dilemma that arises when ineffective assistance of counsel claims are raised on direct appeal, without an evidentiary hearing having been held or other attention having been given to the claim by the trial court. As a result, our review of counsel's performance in the present case is inherently hampered by our necessary reliance on only the lifeless transcript to assess the dynamic and highly judgmental process of jury selection. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir.1989) (jury selection process requires attorney to call upon experience, intuition, insight, and empathic abilities; the "[w]ritten records give us only shadows for measuring the quality of such efforts"), *cert. denied*, 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 487 (1990). Unlike collateral attacks on verdicts, where defense counsel might have an opportunity to testify at a hearing to explain the strategic reason for particular actions, *see, e.g.*, *State v. Terry*, 601 So.2d 161, 163 (Ala. Crim.App.1992), we must rely solely on the transcript to discern the likelihood that

---

of bias, a court errs by refusing to dismiss a juror for cause. *See Brooks*, 631 P.2d at 883–84. The *Ellifritz* court appropriately discussed the strength of Ms. Mckee's feelings in the context of whether the court committed plain error by failing to dismiss her for cause, not in assessing defendant's alternate claim that trial counsel's performance was deficient. *See id.*

**4.** Ms. Dunn, the juror with child care problems, also stated that her house had been burglarized. However, that was not the basis for defense counsel's challenge. Instead, counsel explained to the court that her for-cause challenge arose from concern that the juror might not be able to concentrate if her child care situation remained unstable. On appeal, defendant claims that trial counsel rendered ineffective assistance because she failed to use Ms. Dunn's victim status as a basis for a for-cause challenge, and because she then used a peremptory challenge to remove Ms. Dunn from the jury, despite the fact that she was supposedly entitled to a for-cause challenge. However, trial counsel's activity with respect to Ms. Dunn, more than any other juror in question, demonstrates her active participation in the voir dire process. Trial counsel specifically requested Ms. Dunn be brought into chambers for further questioning, actively questioned Ms.

Dunn, and challenged her for cause. We accordingly apply the *Strickland* analysis and presume that counsel's decision not to challenge her on the basis of her victimhood fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

Furthermore, defendant's reliance on *State v. Moton*, 749 P.2d 639 (Utah 1988), to support his claim that it is error for defense counsel to use a peremptory challenge when a for-cause challenge was justified, is misplaced. *Moton* insofar as it is relevant to the current discussion, stands for the proposition that a *trial court* errs by forcing counsel to use a peremptory challenge when a for-cause challenge is justified. *Id.* at 642. As noted in other parts of this opinion, the nature of a claim that the trial court erred by not granting a for-cause challenge is fundamentally distinct from a claim that trial *counsel's* performance was ineffective because counsel did not assert such a challenge. *See* note 3. At least in situations where counsel has nothing better to do with his or her peremptory challenges, it is within the realm of legitimate trial strategy to painlessly use a peremptory challenge to remove a disfavored potential juror rather than to invest the effort to develop the basis for a challenge for cause.

counsel acted other than in accordance with conscious tactics.[5]

■ Given *Strickland*'s strong presumption of competence, we need not come to a conclusion that counsel, in fact, had a specific strategy in mind. *See* 466 U.S. at 689, 104 S.Ct. at 2065 (strong presumption exists that counsel's action *"might* be considered sound trial strategy") (emphasis added) (quoting *Michel v. State,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Instead, we need only articulate some plausible strategic explanation for counsel's behavior. *See Nunnemaker v. Ylst,* 904 F.2d 473, 477 (9th Cir.1990) (where counsel failed to object to state psychiatrist's testimony, no ineffective assistance because counsel's action "may well have been a sound trial tactic"), *rev'd on other grounds,* —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *United States v. Clairborne,* 870 F.2d 1463, 1469 (9th Cir.1989) (no ineffective assistance of counsel where "there are plausible reasons for everything [trial counsel] did or did not do"); *Kubat v. Thieret,* 867 F.2d 351, 364–65 (7th Cir.1989) (in capital case, where ambiguity existed concerning whether counsel ever considered submitting a lesser included offense instruction, assistance was effective because he could reasonably have chosen not to submit the instruction to avoid weakening the alibi defense), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989); *Boggess v. State,* 655 P.2d 654, 656 (Utah 1982) (counsel provided effective assistance because "it may well. have been part of his strategy to not seek a

mistrial"); *West Valley City v. Rislow,* 736 P.2d 637, 638 (Utah App.1987) (defense counsel's failure to raise various objections "could have been a legitimate exercise of judgment"). If a rational basis for counsel's performance can be articulated, we will assume counsel acted competently. Indeed, authority from this court supports the notion that an ineffective assistance claim succeeds only when no conceivable legitimate tactic or strategy can be surmised from counsel's actions. *See State v. Moritzsky,* 771 P.2d 688, 692 (Utah App. 1989). *Cf. Martin v. Rose,* 744 F.2d 1245, 1249 (6th Cir.1984) (although counsel's decision to "stand mute" throughout entire trial was deliberate trial tactic, it could not "be considered 'sound trial strategy' " and constituted ineffective assistance of counsel); *Burris v. State,* 558 N.E.2d 1067, 1072 (Ind.1990) (because there were "conceivable tactical explanations for" his actions, counsel's actions during guilt phase did not constitute ineffective assistance); *Delrio v. State,* 840 S.W.2d 443, 446 (Tex. Crim.App.1992) (even if trial counsel believed former narcotics officer who knew defendant might be partial, court could "envision circumstances" whereby his presence on jury was advantageous).

Even given the narrow window through which we are allowed to glimpse the proceedings below, defense counsel appears to have performed competently. Defense counsel appeared actively engaged in the selection process, and her successful and attempted challenges for cause demon-

---

**5.** Pursuant to a recently adopted change in the Utah Rules of Appellate Procedure,

> [a] party to an appeal in a criminal case may move [the appellate court] to remand the case to the trial court for the purpose of entering findings of fact relevant to a claim of ineffective assistance of counsel. The motion shall be available only upon an allegation of facts *constituting ineffective assistance of counsel* not fully appearing in the record on appeal.

Utah R.App.P. 23B(a).

This rule was clearly not intended to provide for remand in the typical ineffective assistance case where the parties dispute whether trial counsel's actions reflected some strategy, given the facts as established by the record. Instead, Rule 23B is directed to cases where some crucial factual information is *absent* from the rec-

ord. For example, if a defendant claims to have provided defense counsel with a witness list containing names of corroborating witnesses whom counsel allegedly failed to contact, a remand pursuant to Rule 23B may be necessary to establish whether counsel was in receipt of the list, and whether counsel made any effort to contact the witnesses. *Cf. State v. Templin* 805 P.2d 182, 186–188 (Utah 1990) (where defendant claimed he provided counsel a prospective witness list and trial court found counsel did not contact people on the list, counsel provided ineffective assistance). In the present case, neither party asserts facts not in the record. This precludes us from exercising our prerogative under Rule 23B to remand the case on our own motion where the "motion would have been available to a party." Utah R.App.P. 23B(a).

strate she was familiar with the challenge procedure and took her responsibility seriously. Even the bare transcript yields some clues as to counsel's rationale for leaving some of the jurors in question unchallenged. Juror Wolf, for example, was not the actual burglary victim, but, more importantly, he engaged in recreational activities and provided support for relatives who were convicted of crimes. He also expressed understanding toward those who commit crimes. Juror Caldwell, like Mr. Wolf, had not been a burglary victim herself. Instead, her mother-in-law's house was burglarized in the relatively distant past. Furthermore, Ms. Caldwell, on her own initiative, told the court that the incident would not alter her judgment in defendant's case. Trial counsel also demonstrated active engagement in the jury selection process with her attempted for-cause challenge of Ms. Dunn, who had potential child care problems and had also been a burglary victim. *See* note 4. Counsel attempted to challenge Ms. Dunn because she feared Ms. Dunn would be distracted by her child care dilemma, but she did not use Ms. Dunn's prior experience with burglary as a basis for exclusion. Without more, one might fear that counsel failed to realize that being a burglary victim could give rise to a challenge. However, immediately after challenging Ms. Dunn, defense counsel successfully challenged two other jurors on the basis of their being victims of burglary or theft. Subsequently, defense counsel utilized a peremptory challenge to remove Ms. Dunn from the jury. Such activity evinces counsel's adamant desire to rid Ms. Dunn from the jury as well as her assessment that Ms. Dunn did not express the degree of bias sufficient to justify a for-cause challenge. *See also* note 4.

■ The transcript reveals fewer hints about defense counsel's decision not to challenge Ms. Andrews for cause. Ms. Andrews did, however, respond unequivocally to the judge's inquiries as to whether she could find the defendant innocent if the evidence so indicated. Moreover, the transcript reveals nothing about her demeanor or other intangible characteristics that constitute the collage of attributes attorneys assess in choosing jurors. For all we know, Ms. Andrews was the most attentive juror, or the only one who glanced disparagingly at the prosecution or sympathetically toward the defendant. Counsel's overall performance inspires confidence and leads us to conclude that she could have discerned—indeed, that she probably did discern—some qualitative difference between those jurors she challenged for cause and those she did not.

■ We are unaware of, and defendant has not brought to our attention, any rule that automatically disqualifies prospective jurors who have been, or have friends or relatives who have been, victims of crimes similar to those at issue in the case where they might sit as jurors. Furthermore, cases in various state and federal jurisdictions demonstrate that when trial counsel allows the seating of jurors, who upon initial voir dire inquiry appear biased, courts deny the ineffective assistance claim unless counsel's actions could not conceivably constitute legitimate trial tactics. *See, e.g., Singleton v. Lockhart*, 871 F.2d 1395, 1399–1400 (8th Cir.1989) (in capital murder case, relative of a murder victim was not actually biased and counsel's failure to challenge him was tactical); *Houston v. Nelson*, 404 F.Supp. 1108, 1116 (C.D.Cal. 1975) (in pre-*Strickland* case, where juror expressed "a particularly strong feeling against" kidnapping, but gave assurances of ability to consider evidence fairly, counsel's decision not to challenge was legitimate trial tactic); *Ogle v. State*, 807 S.W.2d 538, 541–42 (Mo.App.1991) (where juror in rape case said he "[p]robably would" be able to set aside sister-in-law's rape, decision not to challenge did not constitute ineffective assistance); *Childers v. State*, 764 P.2d 900, 904 (Okla.Crim.App.1988) (no ineffective assistance where unchallenged juror in rape case said she could set aside the fact a friend's daughter was raped and murdered, even though she was afraid same could happen to her daughter). *Cf. State v. Terry*, 601 So.2d 161, 163–64 (Ala. Crim.App.1992) (where counsel testified at post-conviction hearing that he did not know how to strike jurors and juror who

said she would side with the State remained unchallenged, defendant received ineffective assistance); *Presley v. State,* 750 S.W.2d 602, 604–608 (Mo.App.) (assistance ineffective where juror said he and family were crime victims and he would be partial, but counsel thought he said impartial, and failed to challenge), *cert. denied,* 488 U.S. 975, 109 S.Ct. 514, 102 L.Ed.2d 549 (1988).

Because we "will not second-guess a trial attorney's legitimate use of judgment as to trial tactics or strategy," *State v. Pascual,* 804 P.2d 553, 556 (Utah App.1991) (quoting *State v. Wight,* 765 P.2d 12, 15 (Utah.App. 1988)), we hold that counsel's performance did not fall below an objective standard of reasonableness. Consequently, defendant fails to "overcome the strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment." *State v. Bullock,* 791 P.2d 155, 159–60 (Utah 1989), *cert. denied,* 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990).

## JURY INSTRUCTION

Defendant next claims that the trial court committed reversible error because it failed to instruct that the jury could find him guilty of a lesser, though not included, charge of public intoxication. *See* Utah Code Ann. § 76–9–701 (1990). A court's refusal to provide a requested jury instruction is a legal question and we therefore review the ruling nondeferentially, for correctness. *State v. Hamilton,* 827 P.2d 232, 238 (Utah 1992). Although defendant contests the court's ruling on one instruction, "[w]e review jury instructions in their entirety and will affirm when the jury instructions taken as a whole fairly instruct the jury on the law applicable to the case." *State v. Ontiveros,* 835 P.2d 201, 205 (Utah App.1992).

Defendant claims that because the court refused to instruct the jury on the lesser charge of public intoxication, he was deprived of his opportunity to present his theory of the case, namely that he was too intoxicated to form the requisite mental state for the specific intent crimes of burglary and theft. This argument, however, confuses defendant's unquestioned right to present an affirmative defense [6] with the questionable opportunity to be found guilty of other crimes. Defendant certainly has the right to present his theory of the case, *State v. Smith,* 706 P.2d 1052, 1058 (Utah 1985), but his contention that he has a right to jury instructions concerning a lesser, uncharged, unincluded offense is wholly without merit.

Defendant admits public intoxication is not a lesser included offense of burglary or theft, and accordingly the jury instruction cannot be justified on that basis. A jury instruction that defendant could be found guilty of public intoxication would not get defendant off the hook for burglary or theft in the same way that an instruction for a lesser included offense would present the jury with a choice of either finding him guilty of the major offense or finding him guilty of the lesser offense, but not the opportunity to convict for both. *See* Utah Code Ann. § 76–1–402(3) (1990). Indeed, a jury could find defendant guilty of lesser (though not included) charges in addition to, rather than in lieu of, his convictions for burglary and theft. If, as defendant suggests, he is entitled to have an instruction on any charge that the prosecutor could conceivably have brought based on the facts, the court would also have been required to provide jury instructions in this case for littering, Salt Lake City, Utah, Code § 9.12.060 (1987); disorderly conduct, *id.* § 11.12.020; and loitering. *Id.* § 11.12.-070. Since public intoxication, as well as the crimes just mentioned, are not lesser included offenses, defendant in this case should be relieved that he was not charged with the panoply of offenses for which he may very likely have been found guilty in addition to the crimes for which he was convicted.

---

6. "Voluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense." Utah Code Ann. § 76–2–306 (1990).

More importantly, however, a public intoxication instruction was unnecessary and entirely independent from defendant's ability to present his affirmative defense to the jury. *See* Utah Code Ann. § 76–2–306 (1990). The jury instructions as a whole clearly afforded the jury an opportunity to accept defendant's theory of the case and find him innocent if the jurors determined that the facts bore his theory out. Jury instruction 22 provided in relevant part as follows:

If you find that the defendant was intoxicated to the extent that he did not intend to commit a theft then you must find him not guilty on both counts.

Other instructions further demonstrate that the jury had ample opportunity to appraise the merits of defendant's theory of the case. Instruction 18 provided in part:

Before a defendant may be found guilty of a crime, the prosecution must prove beyond a reasonable doubt that ... he committed the act with the intent required for the crime.

Instruction 21 similarly provided:

The crime charged in this case is a serious crime which require[s] proof of specific intent before the defendant can be convicted.... To establish specific intent the prosecution must prove beyond a reasonable doubt that the defendant knowingly, and not by mistaken inadvertence, did an act which the law forbids, purposely intending to violate the law.

These instructions, taken together, place appropriate emphasis on the importance of defendant's state of mind—the specific element of the offense rebutted by an intoxication defense—and also underscore the State's burden of proving the required intent. Instructing the jury that defendant could be found guilty of a lesser offense of public intoxication, when the defendant was not charged with the offense, would not only have usurped the prosecutor's discretion for determining which charges to bring, *see State v. Crick*, 675 P.2d 527, 532 (Utah 1983), but would have provided superfluous obfuscation of the central issues before the jury. We conclude that the court correctly refused to submit the public intoxication instruction to the jury.

## PROPRIETY OF STATE'S REBUTTAL WITNESS

### A. Foundation

■ Defendant contends that Sergeant Korring's expert testimony lacked sufficient foundation and that the trial court erred by overruling defense counsel's objection to that testimony. *See* Utah R.Evid. 703. The trial court possesses discretion as to the appropriateness of expert testimony in a specific case. *See State v. Espinoza*, 723 P.2d 420, 421 (Utah 1986); *State v. Clayton*, 646 P.2d 723, 726 (Utah 1982). This court "will not reverse that determination on appeal in the 'absence of a clear showing of abuse.'" *State v. Larsen*, 828 P.2d 487, 492 (Utah App.) (quoting *Lamb v. Bangart*, 525 P.2d 602, 607–08 (Utah 1974)), *cert. denied*, 836 P.2d 1383 (Utah 1992).

■ Relying in large part on *State v. Pendergrass*, 803 P.2d 1261 (Utah App. 1990), defendant specifically argues that Sergeant Korring lacked vital information concerning the circumstances surrounding defendant's drinking necessary to form an expert opinion about his state of mind at the time of the burglary.[7] In *Pendergrass*, the defendant offered two experts, a psychologist and a psychiatrist, to testify about the effect that multiple drug ingestion would have had on defendant's "ability to form the requisite mental state for murder." *Id.* at 1265. Defendant could not, however, establish the quality or quantity of drugs consumed by defendant at the relevant time. *Id.* The experts, therefore, acknowledged they possessed insufficient information upon which to form reliable opinions as to the effect of defendant's multiple drug ingestion on his ability

---

7. At trial, defendant primarily focuses the foundation objection on the fact that officer Korring lacked the necessary training to qualify as an expert. *See* Utah R.Evid. 702. The court overruled that objection and defendant does not raise that argument on appeal, undoubtedly because of Sergeant Korring's extensive training in the area of alcohol intoxication.

to form the intent required for murder. *Id.* at 1266. This court concluded "it was not an abuse of discretion for the trial court to have excluded the expert testimony as being too speculative." *Id.*

Defendant's *Pendergrass* argument is inapplicable. In *Pendergrass*, defendant attempted to use expert testimony to establish his state of mind. Here, defendant raised the issue of his state of mind, and the State called Sergeant Korring to rebut defendant's testimony concerning the amount of alcohol he drank on the night in question. Sergeant Korring sought to do so by showing that defendant's behavior was inconsistent with that of someone who had drunk as much as defendant claimed to have consumed. In essence, Sergeant Korring was simply testifying that if defendant drank what he said he drank, his behavior on the night of the burglary would have been much different than that described by another witness. Furthermore, the information that the *Pendergrass* experts required to form an opinion—quantity consumed, timing, purity, and defendant's tolerance level—had all been entered into evidence in the present case by defendant's own testimony.[8] Consequently, sufficient foundation existed for Sergeant Korring's expert rebuttal testimony.

### B. Notice

Defendant timely requested "[a] list of all the witnesses that the State intends to call for trial" pursuant to Utah R.Crim.P. 16(a)(5). He now asserts that, regardless of the outcome of his lack of foundation claim, Sergeant Korring's testimony should have been excluded because the State failed to notify him Korring was going to testify. The trial court's decision that the State was not required by Rule 16 to give such notice before trial was a legal conclusion, and we therefore review that conclusion for correctness. *See Allred v. Allred*, 835 P.2d 974, 977 (Utah App.1992).

▆▆ Apparently all but conceding that the State was not required to disclose before trial a rebuttal witness whose need could not reasonably have been anticipated, defendant asserts that Sergeant Korring was not such a rebuttal witness. Defendant is incorrect. As noted above, Sergeant Korring was called specifically to rebut defendant's testimony describing the amount of alcohol he drank on the night of the burglary. Furthermore, we find no merit in defendant's related argument that a distinction exists between lay and expert rebuttal witnesses in this regard. Whether a lay person testified that he or she spent the evening with defendant and observed no alcohol intake, or whether an expert testified that a person who drank the amount of alcohol that defendant claimed to have drunk would have acted differently than as testified to by another witnesses, the purpose of the testimony is still to rebut the evidence presented by defendant's testimony.

Given that Korring was indeed a rebuttal witness, albeit an expert one, the only remaining question is whether the State

---

**8.** Defendant argues that Sergeant Korring was unqualified to testify because defendant had also ingested marijuana, and that Sergeant Korring possessed no expertise as to the effects of drugs other than alcohol. This argument is unpersuasive because Sergeant Korring testified solely about the effect of alcohol, not marijuana. Consequently, his testimony did not describe the inevitably greater degree of intoxication arising from multiple drug use. If he, or another expert, had testified about the effects of combined alcohol and marijuana use, that testimony would have produced a description of defendant's probable behavior even more at odds with the testimony of Mr. Kelty concerning defendant's actions. As Sergeant Korring's testimony stood, absent a description of the effects of multiple drug use, the jury possessed less reason to doubt defendant's credibility with respect to the amount of alcohol and drugs he ingested.

On the other hand, if the jury chose to believe both officer Korring and defendant, his expert testimony, especially his comment that at a 0.37 blood alcohol level a person could experience blackouts, would have bolstered defendant's claim that he was unable to form the requisite intent for burglary and theft. In fact, during her closing argument, trial counsel utilized Sergeant Korring's testimony as evidence supporting defendant's inability to form the requisite intent for the crimes charged. Indeed, Sergeant Korring's testimony provided the only scientific evidence from which the jury might have concluded defendant lacked the ability to form the requisite intent.

should have anticipated the need for him before trial and so have notified defense counsel. It is clear the State did not know the defendant was going to testify at trial until opening arguments. Even the trial judge remarked "it was my impression this morning that the defendant was not going to testify.... [I]t was somewhat of a surprise to me at noon when you said he was going to testify." From all that appears, defendant injected a degree of surprise into the proceedings and the State simply reacted by contacting a witness known to have some expertise in the relevant area. The State in this case appropriately responded to an exigency at trial and notified defense counsel as soon as possible that an expert rebuttal witness had been successfully contacted, who he was, and what his general purpose would be.

We hold that the State was not precluded from calling a rebuttal witness not disclosed before trial in circumstances where it, in good faith, had no reason to expect the need for such witness before trial.

## CONCLUSION

Defendant failed to meet his burden for the claim that he was deprived of the effective assistance of counsel. We also find no merit in defendant's claims that the court erred in not submitting his requested jury instruction and in allowing the State to call an expert rebuttal witness. The defendant's conviction for burglary and theft is therefore affirmed.

GARFF and GREENWOOD, JJ., concur.