**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Thomas Wesley CALLAHAN, Defendant and Appellant.**

**No. 920747–CA.**

Court of Appeals of Utah.

Dec. 15, 1993.

---

Lee C. Rasmussen and H. Wayne Green, Salt Lake City, for defendant and appellant.

Jan Graham and Joanne C. Slotnik, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Thomas Callahan appeals his conviction for aggravated assault, a third degree felony, in violation of Utah Code Ann. § 76–5–103 (1990). Defendant's principal contention is that he was denied the effective

assistance of counsel.[1] We affirm his conviction.

## FACTS

We state the facts in the light most favorable to the jury's verdict. *State v. Hamilton*, 827 P.2d 232, 233–34 (Utah 1992). On July 22, 1992, defendant began working for Carl Murdock at an auto-body repair shop in Lindon, Utah. As part of the arrangement, Murdock allowed defendant to live in his camper, use the bathroom facilities in the shop, and drive his pickup. However, the employment situation did not work out, apparently due to what Murdock termed defendant's "argumentative" behavior. A few weeks later, on the morning of August 4, Murdock terminated defendant's employment. In the shop office that afternoon, Murdock paid defendant for the work he had completed and asked defendant to return the truck and shop keys. Defendant in turn demanded two weeks' severance pay, about $400. Murdock refused to pay, left the office, and went into the shop area to tell his son and his son's "helper," Steve Dickerson, that there might be some trouble.

Dickerson accompanied Murdock back into the office where, according to Murdock's testimony, Dickerson asked defendant for the keys. In response, defendant went into the shop area and picked up an iron bar approximately one inch in diameter and twelve inches long. Murdock further testified that defendant then raised the bar above his head and asked, "What are you going to do about it?" Carrying the bar, defendant then moved past Murdock and Dickerson to the outside of the shop and toward the camper in which he was living. Murdock and Dickerson followed defendant, insisting that he return the keys. At some point outside the shop, defendant stopped next to a barrel and emptied the contents of his pocket in an attempt to demonstrate that he did not have the keys. Frustrated, Murdock went to call the police.

Dennis Gray was working nearby on a front-end loader and was able to observe the next part of the argument. According to Gray's testimony, defendant "had the bar and he was holding it up like this, and saying, 'Somebody around here is going to get hurt.'" Gray stated that it seemed to him that Dickerson had his hand out and was demanding the keys. Then Dickerson rushed up·to defendant and defendant "hit him in the side of the head with this pipe." Dickerson in turn testified that about the time Murdock went to call the police, defendant looked as if "he was going to reach and hit one of us with the pipe," so Dickerson "went to grab the pipe from [defendant's] hand" but instead "was hit on the head with it." Dickerson also recalled that he was "dazed" for a second, and then pushed defendant to the ground.

Dickerson then turned and ran away, and defendant pursued him until he was tackled by Murdock, whom defendant also hit with the bar. Defendant was then temporarily restrained by Gray. Shortly thereafter, according to Gray, defendant took the iron bar and went into the camper. A few minutes later, when the police arrived, defendant emerged from the camper without the bar. Murdock testified that he again asked defendant for the keys to the shop, which defendant finally surrendered. Defendant was subsequently arrested and charged with aggravated assault.

At trial, Murdock, Dickerson, Gray, and the responding police officer all testified for the prosecution. Defendant testified in his own defense. On cross-examination, the prosecution questioned defendant about a previous conviction for assault, to which defendant's counsel did not object. The jury convicted defendant as charged. Defendant challenges his conviction, claiming, for the first time on appeal, that he was denied effective assistance of counsel in his defense.

---

1. Defendant also claims that questioning about a past conviction for assault constituted prosecutorial misconduct, that in admitting such evidence the trial court committed prejudicial error, and finally, that the evidence as a whole was insufficient to support the jury's verdict. We find no merit in these assertions, and accordingly decline to address them. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989); *State v. Vigil*, 840 P.2d 788, 795 (Utah App.1992), *cert. denied*, 857 P.2d 948 (Utah 1993).

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Legal Standard

The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... have Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the amendment to include "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). The Court has also established a two-part test for determining whether criminal defendants have been denied their Sixth Amendment right:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Accord State v. Templin*, 805 P.2d 182, 186 (Utah 1990).

 In order to satisfy the first prong of the *Strickland* test, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. at 2064. However, in making such an analysis, "this court will not second-guess trial counsel's legitimate strategic choices, however flawed those choices might appear in retrospect." *State v. Tennyson*, 850 P.2d 461, 465 (Utah App. 1993). *See also Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In addition, "[o]nce a defendant proves that counsel's performance failed the reasonableness test, as measured by prevailing professional standards, he can meet the prejudice prong only by showing there is a reasonable probability that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Tennyson*, 850 P.2d at 466 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

 Where the claim of ineffective assistance of counsel is raised for the first time on direct appeal, "we must decide whether defendant was deprived of the effective assistance of counsel as a matter of law." *Tennyson*, 850 P.2d at 466. *See also State v. Ellifritz*, 835 P.2d 170, 175 (Utah App.1992). However, even though we decide the issue as a matter of law, "appellate review of counsel's performance must be highly deferential; otherwise, the 'distorting effects of hindsight' would produce too great a temptation for courts to second-guess trial counsel's performance on the basis of an inanimate record." *Tennyson*, 850 P.2d at 466 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

### B. Analysis of Defendant's Claim

Defendant bases his claim of ineffective assistance of counsel on three grounds. First, defendant claims that trial counsel failed to investigate the facts of his case. Second, defendant argues that counsel did not adequately prepare him to testify. Finally, defendant claims that counsel failed to prevent or even object to prejudicial testimony improperly admitted at trial.

#### 1. Failure to investigate

 Defendant first argues that trial counsel's alleged failure to interview and subpoena prospective defense witnesses constituted ineffective assistance. As the Utah Supreme Court has noted, "If counsel does not adequately investigate the underlying facts of a case, including the availability of prospective defense witnesses, counsel's performance cannot fall within the 'wide range of professional assistance.'" *State v. Templin*, 805 P.2d 182, 188 (Utah 1990) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). However, there is nothing in the record or even in defendant's brief identifying these supposed witnesses, much less the substance of their testimony. In fact, it appears that essentially every participant in or observer of the events culminating in defendant's arrest testified at trial. Defendant's new appellate counsel conceded as much at oral argument, while alluding to some possi-

ble observers having lunch at a fast food restaurant across the street. While there may be some remote possibility that such individuals saw the events, could be located, and would have a different view of what happened than the eyewitnesses who testified at trial, it is not reasonable to expect trial counsel to try to locate every possible witness who might have observed the incident, especially from some distance, in the hope that one of them might provide helpful testimony. Accordingly, trial counsel's alleged inaction does not meet the first prong of the *Strickland* test, and thus does not constitute ineffective assistance.

### 2. Failure to prepare

 Defendant's second claim is that trial counsel did not adequately prepare his case, in that he failed to properly coach defendant on how to testify and did not reasonably direct the course of his testimony at trial.[2] Defendant asserts that this failure was prejudicial in that defendant's rambling testimony completely destroyed his credibility, which was essential to his claim of self-defense. However, in order to establish ineffective assistance, defendant must overcome a strong presumption that counsel's performance fell "within the wide range of reasonable professional assistance" and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. State,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). *Accord Templin,* 805 P.2d at 186.

Defendant fails to overcome the presumption that counsel's decision to allow him to tell his side of the story—in his own way, and with minimal interference by counsel—was reasonable and sound trial strategy. For example, counsel may have thought defendant's apparently vivid recall would impress the jury. In addition, counsel may have discovered that interjecting questions or trying to direct defendant's testimony only confused him, and made his testimony even less credible. In the course of his testimony, defendant was able to recount most of the events leading up to his arrest, some of which were supported by the other witnesses. For example, Gray's testimony corroborated defendant's recollection that Dickerson rushed up to him right before defendant hit him with the iron bar. Dickerson also confirmed that he knocked the defendant down, although only after being hit with the pipe. All in all, counsel's decision to allow defendant to freely testify as to his version of the events meets the deferential *Strickland* standard under which the performance of trial counsel is evaluated.

However, even if trial counsel's failure to better prepare and focus defendant's testimony were to be viewed as falling below the standard of reasonable representation, thus meeting the first prong of *Strickland,* we fail to see how the outcome of the case would, in any probability, have been different, as required by the second part of the *Strickland* test. It was the essence of defendant's testimony that destroyed his credibility, not its delivery.

The evidence was undisputed that defendant struck Dickerson. The only question was whether the attack constituted an assault or an act of self-defense. Defendant claimed that Dickerson first struck him across the chest with a "four foot long" object that was "blue or turquoise green." In contrast, Dickerson testified that at no time did he have any object in his hands. Dickerson's statement was corroborated both by Gray's testimony and the responding police officer's inability to locate any such distinctive object at the crime scene. Defendant

---

**2.** Insofar as defendant is suggesting counsel was remiss in letting him testify at all, it should be noted that defendant had a constitutional right to testify in his own defense and retained "ultimate authority in deciding whether or not to testify." *State v. Brooks,* 833 P.2d 362, 364 (Utah App. 1992) (citing *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983)). Given this right, we would be hard pressed to find ineffective assistance of counsel in a case where the defendant insisted on testifying, and counsel, although believing it would be detrimental to defendant's case, acquiesced. In this case, only defendant could testify to his state of mind when he hit Dickerson on the head with an iron bar. Trial counsel may well have decided that taking the stand was defendant's only chance of an acquittal, given the prosecution's case against him.

also testified that, after taking the iron bar inside the camper, he just tossed it down on his unmade bed. In contrast, Gray testified that the weapon "was shoved and hid underneath" the covers of defendant's fully made bed, which testimony was confirmed by the investigating police officer.

Nor does defendant point to any other facts helpful to his case which could have been elicited through more effective preparation or direction of his testimony. Accordingly, there simply is no reasonable probability that the outcome would have been any different, even if defendant's testimony had been more polished or concise. In sum, trial counsel's alleged dereliction in the preparation and further direction of defendant's testimony also fails to meet the prejudice requirement of the *Strickland* test.

### 3. Failure to object

■ Defendant's final claim is that trial counsel's failure to object to the prosecution's questioning concerning his prior conviction for assault constituted ineffective assistance. The fact that counsel did not file a motion in limine, or object to the questioning at trial, likely fails to meet the standard of reasonable representation, as the State all but concedes, thus satisfying the first prong of *Strickland.* However, such failure was not prejudicial to defendant's case, as required by the second prong of the *Strickland* test. In order to meet that prong, defendant must show a "reasonable probability" of a different result. Defendant has not met that burden. Given the nature and extent of the testimony contradicting defendant's account of the events, the absence of corroborating evidence or testimony supporting his claim of self-defense, and the defendant's overall lack of credibility, we conclude that the jury would, in all probability, have convicted defendant even absent the introduction of his previous conviction for assault. Therefore, counsel's failure to keep the evidence from the jury was not prejudicial, and thus fails to meet the second *Strickland* requirement.

### CONCLUSION

Trial counsel's representation of defendant does not constitute ineffective assistance of counsel as defined by *Strickland.* Accordingly, we affirm defendant's conviction.

BILLINGS and GREENWOOD, JJ., concur.